**HYMAN v. NUNAN, Commissioner of Internal Revenue.**

**GORDON v. SAME.**

**Nos. 107–109.**

Circuit Court of Appeals, Second Circuit.

June 30, 1944.

Arthur B. Hyman, of New York City (Morris Katz, of counsel), for petitioners.

Carlton Fox, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Robert N. Anderson, and Robert Koerner, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Florence S. Hyman appeals from an order of the Tax Court assessing a deficiency in her income tax for the year 1939, and a second order assessing a gift tax. Bertha M. Gordon appeals from an order assessing a deficiency in her income tax for the same year. In each appeal as to the income tax deficiencies two points are involved: (1) whether a dividend, assigned by the taxpayer as a gift two days before it was declared, and paid sixteen days after the assignment, was part of the taxpayer's gross income; (2) whether the income from a trust in personal property set up by the taxpayer for her son, remained her income. In the appeal from the gift tax only one point arises: whether the Tax Court correctly appraised the value of the assigned dividend.

In the income tax appeals the facts were as follows: Hyman, the taxpayer's husband, was a lawyer in partnership with Gordon, the husband of the other taxpayer. Mrs. Hyman held 10,000 shares of stock in the Climax Molybdenum Company; Mrs. Gordon, 12,000 shares. In 1936 this company had earned $2.065 a share and had declared four quarterly dividends, the first three of 20 cents each, and the last of 40 cents; in 1937 it had earned $2.85 and had declared four quarterly dividends of 30 cents each and an extra dividend of 50 cents at the same time as the third dividend; in 1938 it had earned $3.12 and had declared the same dividends as in 1937 except that the extra dividend had been one dollar instead of 50 cents. In 1939 it earned $4.09 and up to December had declared three regular dividends of 30 cents and an extra dividend of one dollar as in 1938. On December 8th of that year it declared a fourth dividend of 30 cents and a second extra dividend of one dollar. Thus out of earnings of about $12 in the four years the company had declared on December 6, 1939 dividends of $6.80. Each taxpayer on December 6, 1939, assigned to her husband the right to receive all dividends which might be declared and paid before the end of the year. The Commissioner nevertheless held that the dividend —regular and extra—of $1.30 declared on the 8th remained a part of their gross incomes.

On November 9, 1939, Mrs. Hyman executed a deed conveying 1,000 shares of Climax stock to herself and her husband as trustees for their son and only child, then nearly 18 years old. This trust was to last until he was 30 years old, when the property was to revert to Mrs. Hyman, who meanwhile had power at any time during its existence to substitute any other beneficiary but herself. The income was to be accumulated till the son reached twenty-one, and was then to be paid to him; and the income thereafter was to be paid to him, or used for his education and support. The trustees had the usual powers to invest and manage. On the same day (November

9, 1939), Mrs. Gordon conveyed 1000 shares of Climax stock to herself and her husband in trust for a son, aged seventeen and a half (the Gordons had two other older children). This trust was to last until he became 23 years of age, and, as in the Hyman trust, the income was to be accumulated until he was 21, when the accumulations were to be paid to him; and the future income was to be paid to him or used for his education and support. This trust had no provision allowing the settlor to change the beneficiary; but the powers of management were the same as in the Hyman trust. The Commissioner included the income from these trusts for the year 1939 in the gross income of the taxpayers.

The third appeal is from a gift tax assessed against Mrs. Hyman. The Tax Court assessed a gift tax upon the dividend which she assigned to her husband on December 6, 1939, appraising it on that day at $13,000, the amount declared on the 8th. Mrs. Hyman challenges the finding that the dividend actually declared and paid, was a proper measure of the value of the right assigned at the time of the assignment.

██ We take up first whether the dividends remained income of the taxpayers, despite the assignments to their husbands. The distinction drawn in the cases, as we understand them, is between a transfer of future increments issuing from property of which the taxpayer retains the source, and a transfer of the source itself. That is indeed largely a difference of form—like many legal distinctions—and in taxation the conceptual outlines have not always preserved even so much definiteness as they have in other jural transactions. The income received from the property, when a recognized legal interest has been transferred, is treated as coming from the property transferred, not as transferred income. Brown v. Fletcher, 235 U.S. 589, 599, 35 S.Ct. 154, 59 L.Ed. 374; Irwin v. Gavit, 268 U.S. 161, 167, 45 S.Ct. 475, 69 L.Ed. 897. So far as we can find, no one has, for instance, ever asserted that the income of a life estate or life interest—legal or equitable—is not taxable to the tenant or owner but to the grantor, even though he has retained the reversion for himself. Indeed, in Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, this was extended to grants by the life owner of shares in his life interest, measured by dollars. On the other hand, assigned income to accrue in the future, ordinarily remains the assignor's for purposes of taxation. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665. Indeed, in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, and Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, the line of cleavage was drawn so as to include in the grantor's income property which for other purposes the law treated as completely separate from its source: in the first case, a coupon detached from a negotiable bond; in the second, all future commissions which might become payable under an expired contract of employment. In Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, this doctrine was applied to the assignment by a life beneficiary of a single sum in dollars out of the future income of a trust, the situation being distinguished, as we understand it, from Blair v. Commissioner, supra, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, by the fact that only a single payment was involved, which could not be treated as a transferable fragment, as it were, of the life interest.

██ If we have at all rightly understood the decisions, it is apparent that the assignment of the dividends did not remove them from the wives' gross income. Indeed, in the face of the last three decisions it would be hard to escape the same result, had the dividends been assigned after they had been declared, and had become debts of the corporation. Even then, they would have been less separable from the shares out of which they had come than a coupon—itself a negotiable instrument—is separable from its bond. But when, as here, the transfer is of all dividends which may be declared in a defined future period, the situation too clearly falls within the doctrine of Lucas v. Earl, supra, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, to admit of question. The Tax Court was right.

██ The income which arose from the Hyman trust, fell within the doctrine which has been so often applied in the case of family trusts of short duration, and which had its origin in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. That decision has proved the starting point of a fertile proliferation, out of which no definite doctrine has emerged, or in the nature of things could emerge. We will assume for argument that even a fam-

ily trust which was to last for twelve years —as this trust was—would successfully insulate the trust income from the settlor's gross income, provided that he reserved no control over the disposition of the income during the trust. On the other hand, no settlor could escape the inclusion of the trust income in his own gross income, if he reserved a power to substitute himself as beneficiary. The question here is whether the result is the same when the settlor can substitute any other beneficiary than himself. In Commissioner v. Buck, 2 Cir., 120 F.2d 775 and Brown v. Commissioner, 3 Cir., 131 F.2d 640 the trusts contained just that power; and, although the first interest was for the beneficiary's whole life, the income was included in the settlor's gross income. There were, it is true, distinguishing factors in both these trusts from that at bar, but these were of minor importance, the turning point being the power. In Commissioner v. Lamont, 2 Cir., 127 F.2d 875, we counted it the most important single factor that the settlor, although she retained no legal power to change beneficiaries, was in such a relation to the trustee that he would be almost certain to follow her wishes; and in Helvering v. Elias, 2 Cir., 122 F.2d 171, we regarded the shortness of the term as chiefly important, because it gave the settlor, though he had no legal power, actual power to control the trustee. We are satisfied that, in the case of a family trust—at least if it has no longer span than this—the possession of such a power is conclusive. Little need be added as to the Gordon trust, for, although no power was reserved to the settlor to change the beneficiary, it could last no longer than five and one half years. That made it substantially identical with Helvering v. Clifford, supra, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, itself. The taxpayer suggests that Helvering v. Clifford turned upon the taxpayer's intent to "evade" taxes; but, although the opinion does indeed mention as a ground (309 U.S. at page 334, 60 S.Ct. at page 556, 84 L.Ed. 788) that such trusts would make evasion easy, there is no indication that the taxpayer's motive was thought to be a factor relevant to the result. Our own decisions in Commissioner v. Barbour, 2 Cir., 122 F.2d 165 and Helvering v. Elias, 2 Cir., 122 F.2d 171, are applications of the doctrine substantially on all fours with the case at bar.

■ The last point is whether the finding of the Tax Court has the support of any substantial evidence that on December 6, 1939, the value of Mrs. Hyman's future dividends in her Climax shares was $13,000. She argues that, even though there might have been a probability that some dividends would be declared during the month, no one could know what they would be, and certainly no one could anticipate that they would amount to more than 30 cents, particularly as an extra dividend of one dollar had already just been declared. Assuming arguendo that in the end the burden of proof was on the Commissioner to support his assessment, Hague Estate v. Commissioner, 2 Cir., 132 F.2d 775, 779, nevertheless he starts with a presumption that his assessment was correct. The taxpayer says that she has put in some evidence to rebut that presumption; her position being that it is absurd to suppose dividends not yet declared could have a present value of $13,000, especially when in no past year had two extra dividends of a dollar each ever been declared. It is indeed true, as she says, that the test laid down by the regulations (§ 85.19, Title 26, Code Fed.Reg.), is "the price at which such property would change hands between a willing buyer and a willing seller"; but that must be understood as meaning buyers and sellers, who know all those facts which the donor and donee know. The argument loses all force in the case at bar, if we assume that the donor and donee had some intimation that dividends were to be declared, and what they would be. That they supposed some dividends would be declared is plain; people do not make assignments of all dividends which may be declared within the next twenty-five days upon a single stock for the pleasure of drawing up the documents. These two lawyers, partners, were not on the same day going through precisely similar transactions as mere practice in their calling; and the Tax Court would have been simple indeed, had it not inferred that they knew that some dividend was in prospect. That would indeed have been enough, even in the absence of some testimony from Hyman or his wife as to what they thought that prospect was; but the testimony at least suggests that they supposed that the dividend would be very substantial. Hyman explained this most unusual and significant transaction by saying that his income—disregarding this item of $13,000—was only about $13,000 while his wife's was $40,000. The intimation was that they wished to even up a little for that year; and if so, they must have expected

more than a 30 cent dividend, for $3,000 would not go far to accomplish their purpose, although $13,000 would have. The Tax Court was not called upon to speculate as to the value of the expected dividend with the testimony in that posture. Mrs. Hyman, or her husband, who knew all the facts, was bound to put in some proof at least that the amount of the anticipated dividend was not already known to these four persons to be the same as what it in fact turned out to be two days later. The testimony contains not a syllable on that issue, and the presumption stands unrebutted. Moreover, the situation falls anyway within Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, and other similar decisions.

Orders affirmed.