## GOULDMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5673.

Circuit Court of Appeals, Fourth Circuit.

Jan. 5, 1948.

[4] 28 U.S.C.A. § 112.

R. Carter Scott, Jr., of Richmond, Va., for petitioner.

S. Dee Hanson, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Helen R. Carloss and A. F. Prescott, Sp. Asst's to the Atty. Gen., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This is an appeal from a decision of the Tax Court which upheld an income tax deficiency and penalty in the aggregate sum of $3,111.08 assessed by the Commissioner of Internal Revenue for the year 1941. The principal issue is whether the Tax Court erred in holding that a dividend on stock originally issued to the taxpayer but later transferred by him to his son was taxable to the taxpayer. There is also involved the question whether the Commissioner properly assessed a 5 per cent. negligence penalty as to this item, and also on two other items of income which, it is now admitted, should have been reported.

The Tax Court's findings of fact are not challenged. They show that during 1941 the taxpayer was the president of the Bank of Lancaster at Kilmarnock, Virginia, and a substantial stockholder therein. In May or June of 1941 he and one W. C. Chilton organized the Indian Creek Company, Inc., and each of them purchased 50 shares of the company's stock of the par value of $100 each. For this purpose the taxpayer borrowed $5,000 from the Bank of Lancaster and gave his note therefor secured by his stock.

The Indian Creek Company was organized to engage in the fish business. Its predecessor had been owned by the bank and Chilton, and was indebted to the bank on a note which was considered practically worthless. It was hoped that the new company would be financially successful and would enable the old company to pay its note. On August 13, 1941, 40 shares of the Indian Creek stock were transferred on the books of the company from the taxpayer to his son, and the son paid to his father the sum of $4,000 which he borrowed from the bank on his note secured by the stock which had been issued in his name. The taxpayer paid the bank $4,000 on his note and gave a new note for $1,000 secured by the remaining 10 shares of stock originally issued to him and his note for $5,000 was marked paid.

The fish business during the period, which had already passed when this transfer of stock took place, had been very profitable, and there was reason to believe that it would continue to be profitable during the balance of the season. So it turned out, and on December 9, 1941, the Indian Creek Company declared a 100 per cent. dividend and issued a check for $4,000 to the son who deposited it in his account at the Farmers & Merchants State Bank. On the same day he made a loan of $3,500 to thet taxpayer, which was secured by 200 shares of stock in the Bank of Lancaster. The $4,000 dividend was reported by the son in his income tax return for 1941. It is this item which is directly involved in the pending case, since the Commissioner determined that the dividend was income to the taxpayer rather than to his son.

On January 17, 1942, the company declared a 50 per cent. dividend and a check for $2,000 was delivered to the son. On the same day the son advanced the taxpayer $1,750 which was secured by 100 shares of stock of the Bank of Lancaster.

The taxpayer's indebtedness to his son on these transactions, amounting to $5,250,

was discharged by him on February 16, 1946. However, he had borrowed additional money from his son and, at the time of the hearing before the Tax Court, was indebted to him in the sum of $5,100.

The Tax Court, in view of these facts and of others hereinafter noted, concluded that, while the formalities of a sale had been observed, a bona fide sale did not take place, and that the taxpayer and his son engaged in the transactions described so that the taxpayer might evade the payment of the tax on the income derived from the transferred shares. The taxpayer contends that this conclusion was erroneous as a matter of law and, alternatively, that it was not supported by the evidence. He argues in the first place that the transfer of the stock was valid and binding on the parties under the law of Virginia, since they complied with the local statutory provisions, and that the Tax Court was not free to reach a contrary conclusion for tax purposes. The argument is by no means convincing since it is not clear that the Virginia courts would be governed in all situations by the formalities rather than by the substance of the transaction. But even if this were not so, the taxpayer's contention could not be sustained for it must now be regarded as the established law that the validity of a transaction under state law is not conclusive of its bona fides for the purpose of federal taxation. In the recent decision of the Supreme Court in Commissioner v. Tower, 327 U.S. 280, 287, 288, 66 S.Ct. 532, 536, 90 L.Ed. 670, 164 A.L.R. 1135, it was said: "Respondent contends that the partnership arrangement here in question would have been valid under Michigan law and argues that the Tax Court should consequently have held it valid for tax purposes also. But the Tax Court in making a final authoritative finding on the question whether this was a real partnership is not governed by how Michigan law might treat the same circumstances for purposes of state law. Thus, Michigan could and might decide that the stock-transfer here was sufficient under state law to pass title to the wife, so that in the event of her death it would pass to whatever members of her family would be entitled to receive it under Michigan's law of descent and distribution. But Michigan cannot, by its decisions and laws governing questions over which it has final say, also decide issues of federal tax law and thus hamper the effective enforcement of a valid federal tax levied against earned income. The contention was rejected in Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. There husband and wife made an agreement for joint ownership of the husband's future income. Assuming that the husband's future earnings were under California law considered as partly owned by the wife, this Court refused to accept the State's concept of the effect of the agreement which would have reduced the federal tax on income actually earned by the husband. And in Helvering v. Clifford, 309 U.S. 331, 334, 335, 60 S.Ct. 554, 556, 557, 84 L.Ed. 788, we held that the purpose of 26 U.S.C. § 22(a), 26 U.S.C.A. Int.Rev.Code, § 22(a), to tax all income against the person who controlled its distribution could not be frustrated by family group arrangements, even though the distribution arrangements were valid for state law purposes. The statutes of Congress designed to tax income actually earned because of the capital and efforts of each individual member of a joint enterprise are not to be frustrated by state laws which for state purposes prescribe the relations of the members to each other and to outsiders. Cf. Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 114, 46 S.Ct. 48, 49, 70 L.Ed. 183."

And in Doll v. Commissioner, 8 Cir., 149 F.2d 239, certiorari denied 326 U.S. 725, 66 S.Ct. 30, 90 L.Ed. 430, where a decree from a state court defining the rights of the parties in a family partnership had actually been obtained, the federal court had no hesitation in holding that questions involving the application of federal laws and the interests of the federal government, must be decided on the merits by the appropriate authorities within the federal government, and that final effect cannot be given to the state court's interpretation of the relationship of the parties.

In accordance with these rules the federal courts have not infrequently found it necessary to look beneath the surface of the for-

mal transactions of a taxpayer in order to determine whether a transfer of property, ostensibly made by him, has been made with the intention on his part actually to divest himself of beneficial ownership or, on the other hand, with the intention to create the appearance of a genuine transfer so as to avoid or reduce the payment of income taxes while really maintaining control of the property for his own profit.

It is of course axiomatic that genuine transactions will be given full effect even though they were undertaken for the purpose and have the result of avoiding taxes; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; but it is equally true that the purpose and effect of a transfer may be considered in determining whether it was bona fide. It has been held that one who transfers income to be received in the future from his earnings or from interest on corporate bonds or dividends on corporate stock is taxable thereon notwithstanding the transfer. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Hyman v. Nunan, 2 Cir., 143 F.2d 425. It is true that a distinction is drawn in the cases between a transfer of future increments issuing from property which the taxpayer retains and the transfer of the property itself, but the bona fides of a transfer of the latter kind is always open to question. Family arrangements which result in a reduction of income tax liability have been scrutinized with especial care and questions as to who actually enjoyed the income and controlled the property, from which the income was realized after the transfer, have been deemed especially significant. See Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Hash v. Commissioner, 4 Cir., 152 F.2d 722; Mauldin v. Commissioner, 4 Cir., 155 F.2d 666; Grant v. Commissioner, 10 Cir., 150 F.2d 915; Bradshaw v. Commissioner, 10 Cir., 150 F.2d 918; Johnson v. Commissioner, 2 Cir., 86 F.2d 710; Niles v. Milbourne, 4 Cir., 100 F.2d 723; Richardson v. Smith, 2 Cir., 102 F.2d 697, 125 A.L.R. 774.

The pending case is therefore reduced largely to a question of fact; and our function on review is to determine whether there was substantial support in the evidence for the conclusion of the Tax Court that the transfer lacked substantial reality and was in short a sham. See Commissioner v. Scottish American Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Sewell v. Commissioner, 5 Cir., 151 F.2d 765.

We think that there exists ample evidentiary basis for the inferences drawn by the Tax Court. In the first place it was clearly established that the initiative for the sale of the stock came solely from the taxpayer. He testified that he had asked his son to buy the stock and that the latter replied: "all right, it don't make any difference, if you say so." Secondly, it was shown that the son was unable to pay for the stock at the time he purchased it. He worked as a bank clerk at the Farmers & Merchants State Bank in Fredericksburg, Virginia, and received an annual salary of $3,000. His bank account was rarely over $1,000, and he admitted that if the Indian Creek Company had failed, he would have been compelled to go into future earnings to pay for the stock. He was able to buy the stock only by securing a loan from the Bank of Lancaster of which his father, the taxpayer, was president. Thirdly, the son exercised no control over the stock. He never voted the stock, never attended a stockholders' meeting, and took no part in the management of the business. His stock was consistently voted by the taxpayer. As indicative of the general control exercised by the father over the stock standing in the son's name, it may be noted that when the company was liquidated in June, 1942, and a check for $3,200 was sent to the son, the taxpayer endorsed his son's name upon the check and applied it to the payment of the son's $4,000 note held by the Bank of Lancaster. When asked whether the son had given him consent to endorse his name on the check, the taxpayer replied: "I had no direct authority to endorse his name on the check, but as I understand, he is the

only person in the world who can object to it."

Finally, there was basis for the inference that the father actually enjoyed the dividends on the stock. On December 9, 1941, a $4,000 dividend was paid to the son and deposited by him in his account. Prior to this deposit he was $51.50 overdrawn, and yet on the same day he loaned his father $3,500. On January 17, 1942, a $2,000 dividend was paid the son and deposited by him. Prior to this dividend he was $75.75 overdrawn, but on the same day he loaned his father $1,750. While these loans amounting to $5,250, were repaid by the father in 1946, other advances were made by the son and the father owed him $5,100 at the time of the hearing before the Tax Court. Excluding the items of income in controversy, the son's income in 1941 was $3,000 while the father reported net income of over $30,000. The improbability of the son making repeated and substantial advances to his father in these circumstances is too glaring to require extended comment.

We think it is manifest that there was sufficient evidence to warrant the conclusion that the taxpayer remained the beneficial owner of the stock and that the 1941 dividend must be taxed to him. We have carefully considered the cases[1] relied on by the taxpayer and, insofar as it may be thought that, under the varying circumstances involved, they depart from the principles enunciated herein, we are unable to follow them.

■■ The taxpayer makes the further argument that the Tax Court was not warranted in finding that the transactions between him and his son were not bona fide because the pleadings in the case before it contained no allegation of fraud. It is said that such an allegation was necessary if the Commissioner intended to raise the issue of bona fides, because, under Section 1112 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1112, when the issue of fraud is involved in a tax case, the burden of proof in respect thereto rests upon the Commissioner. The burden of proof in this case, however, was not upon the Commissioner because he was not seeking to impose the 50 per cent. penalty prescribed by Section 293(b) of the Code, 26 U.S.C.A. Int.Rev.Code, § 293(b), in the case of a deficiency due to fraud with intent to evade the tax. The general rule is that the burden is on the taxpayer to prove that the Commissioner's assessment was erroneous; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Greenwood Packing Plant v. Commissioner, 4 Cir., 131 F.2d 815; and this rule obtains where the Commissioner assails the validity of a family arrangement which results in a reduction of the income tax. Commissioner v. Tower, 327 U.S. 280, 286, note 4, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135. Moreover, it is quite clear from the pleadings that the taxpayer had a clear understanding of the issue to be tried because he alleged in his petition that the sale of the stock to his son was bona fide and this allegation was denied by the Commissioner in his answer. The opening statements of counsel in the Tax Court also showed that they fully understood the nature of the controversy.

■ Finally, it is said that the Tax Court erred in sustaining the Commissioner in assessing the 5 per cent. negligence penalty under Section 293(a) of the Code, 26 U.S.C.A. Int.Rev.Code, § 293(a), which provides that if any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per cent. of the total amount of the deficiency shall be assessed. The taxpayer failed to report income in 1941 realized from the sale of lots in a subdivision owned by him, and also the value of property received by him in part payment for his interest in a bakery business. He admits that he should have reported these items of income but claims he was unaware of that duty in 1941 so that his failure to do so was not negligence. The assessment of the negligence penalty is an administrative act dependent upon a finding of the existence of negligence; Bothwell v. Commissioner, 10 Cir., 77 F.2d 35; Board

---

[1] Marshall v. Commissioner, 6 Cir., 57 F.2d 633; Bardach v. Commissioner, 6 Cir., 90 F.2d 323; Hughes v. Commissioner, 5 Cir., 153 F.2d 712; Budd v. Commissioner, 3 Cir., 43 F.2d 509.

690

v. Commissioner, 6 Cir., 51 F.2d 73. The taxpayer offered nothing except his testimony that he was not aware of his duty to report these items. The Tax Court, on the other hand, was of the opinion that the Commissioner's determination should be upheld since the situation was free from difficulty and the taxpayer if in doubt could easily have obtained advice as to the proper course to be pursued. We think that this finding should be sustained.

Affirmed.