Winthrop M. CRANE, III, et al.,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 6779.

United States Court of Appeals
First Circuit.

Heard Nov. 7, 1966.

Decided Nov. 25, 1966.

Jesse R. Fillman, Boston, Mass., with whom James M. Keith, Pittsfield, Mass., and Choate, Hall & Stewart, Boston, Mass., were on brief, for petitioners.

Stuart A. Smith, Atty., Department of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Gilbert E. Andrews, Attys., Department of Justice, were on brief, for respondent.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

These are consolidated petitions to review decisions of the Tax Court upholding the Commissioner's imposition of deficiencies. Basic to the case is an undertaking which the court found to be a trust, and since petitioners so claim, we will assume found correctly. The exact terms of this trust are quoted in the court's opinion, Winthrop M. Crane, III, 1966, 45 T.C. 397, together with a detailed stipulation, neither of which need be in terms repeated. Much of petitioners' argument is devoted to discussing the

nuances of the language of the instrument. While the language is not unimportant, particularly insofar as it aids in construction, we prefer a more robust approach—what is the substance of what was done?[1]

The substance seems to us, though unusual, rather simple. The grantor agreed to advance designated sums from time to time to the trustee to purchase stock in a particular company, for which advances he was to receive interest during the term of the trust at a specified rate out of dividends, if there were any. The trustee would purchase and hold the stock. During the term of the trust the net annual income, after interest payments and expenses, was to be paid to three persons who were designated as beneficiaries. At the termination of the trust on a date specified therein, the beneficiaries could elect to take the stock and pay for it at the average cost per share to the trustee (and grantor). If they did so, the payments would be turned over to the grantor. If they did not, the stock would be turned over to the grantor. Either of these alternatives would discharge all further obligation to the grantor, regardless of the true worth of the stock at the time.

■ During the nine years of the trust the stock which was purchased increased in value. Upon termination the beneficiaries elected to take the stock, and thereafter sold it immediately. The gain which they realized over their, and the grantor's, cost the Tax Court held to be a short term gain. We agree.

For the beneficiaries to claim the "same basis" as the trustee, and thus invoke 26 U.S.C. § 1223(2), it is necessary to find that the stock was held for them from the outset by the trustee, viz., that they became the equitable owners thereof forthwith. 26 U.S.C. § 1015(a). Their receipt of income from the stock did not make them owners of the corpus. In fact, unless they elected to pay for it,

they would never own it. An ordinary optionee is not an owner. Cf. 26 U.S.C. § 1223(6). The beneficiaries were, if anything, less than this, for as to any particular shares it could not be known until the trustee's final purchase what would be the price to be paid, i. e., the average cost per share. Cf. Booth v. Varian Associates, 1 Cir., 1964, 334 F.2d 1, cert. den. 379 U.S. 961, 85 S.Ct. 651, 13 L.Ed.2d 556.

The beneficiaries' statement, "As the shares in the Trust * * * rose in value, the * * * appreciation vested in the beneficiaries from the moment of its accrual," is an inaccurate representation. Suppose that ten shares were purchased at $20 a share, and subsequently the stock increased in value to $30, at which time the trustee bought ten more shares. The value then declines to $25, at which time the trust is terminated. There was a $5 appreciation in the first block over the trustee's cost, but the beneficiaries must pay the average cost per share, and do not receive it. Furthermore, if the beneficiaries were the true equitable owners of the stock, they would have a "vested interest" in a loss, as well as a gain. Since they were not obliged to take the stock, or even make any contribution towards its cost if it declined in value, this was not ownership in any ordinary sense. Their asserted analogy with margin customers of a broker is ill taken. In such cases if the stock falls so sharply that the broker does not have time to sell out until the sales price plus the margin payment is less than the price paid, the customer must personally account.

We must agree with the government that to the extent that the creation of this trust conferred anything on the beneficiaries it was the gift of an option to purchase the stock rather than a transfer of the stock itself. Since the grantor's basis in the option was zero, the basis to the beneficiaries in the option was likewise zero. However, the bene-

---

1. Correspondingly, we do not look at what might have been done. Cf. United States v. Rhode Island Hospital Trust Co., 1 Cir., 1966, 355 F.2d 7; Palmer v. Commissioner of Internal Revenue, 1 Cir., 1965, 354 F.2d 974.

ficiaries' basis in the stock itself was the amount paid by them to the trust for it, 26 U.S.C. § 1012, and not the amount paid by the trust, although the total amounts of the two purchases were identical.

In addition to charging the beneficiaries with a short term capital gain, the Commissioner charged the grantor with the entire net income of the trust on the ground that he was a grantor of a short term trust who had retained a "reversionary interest." 26 U.S.C. § 673(a). The Tax Court affirmed this position.

We may agree that the interest which the grantor possessed was not the usual reversion. But it must also be, although petitioners speak frequently of his "loan" to the trust, that he was not an ordinary lender. In the first place, his advances, concededly, constituted the sole res as to which it could be contended a trust was created. At the termination of the trust, when what petitioners term indebtedness was to be repaid, the grantor would get back his advances if the value of the stock exceeded its cost, but not if the trust corpus had diminished in value. If his advances were a loan, such a decline would result for him in an unrecompensed loss. However, in fact the very measure of the obligation was the corpus, since its return to the grantor would satisfy the debt no matter what its actual value.

So far, the analogy to a reversion is perfect. At least during the period that the market value of the corpus is less than cost, the grantor has a total reversionary interest.

■■ It is true that if the market value of the corpus, at the time of the termination of the trust, exceeded cost, the beneficiaries could, although they need not, call for a distribution of the stock, returning only the original cost to the grantor. To this extent there would be a separation of the corpus, and some of it would not revert. However, when we look at the obvious purpose of section 673(a), it must be to prevent a grantor from making a temporary transfer of assets in order to diminish, for a limited period, the receipt of taxable income therefrom. Until the termination of the trust, regardless of the possible appreciation in market value, the income was the direct product of the grantor's transfer. Even if it were to be considered at any particular moment that the grantor did not have a reversion in that part of the corpus which exceeded in value the amount of his advances, at the least that part of the income attributable to the portion of the corpus whose return would as of that moment be necessary to satisfy the trust's obligation, should be taxable to the grantor. Since the value of the corpus of a trust composed of stock may be expected to fluctuate, elaborate calculations which we scarcely believe the statute contemplates would be required for the purpose of apportioning the income between the grantor and the beneficiaries. Moreover, even though at some moment the corpus of the trust may have appreciated, it would not follow that ultimately it might not diminish, so that the entire corpus would revert. We hold, under the circumstances, that the grantor had a sufficient reversionary interest for the statute to apply to the entire income.

■ We have approached this question independently of our earlier holding that no valid transfer of the stock to the beneficiaries occurred until they paid for it. We observe, however, in this particular case that the correctness of that holding of itself leads to the taxability of the dividends to the grantor under the rules relating to assignment of income when the grantor owns the corpus. See Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75. Since the grantor was the equitable owner of the stock, dividends payable upon it are income to him regardless of to whom paid. Hyman v. Nunan, 2 Cir., 1944, 143 F.2d 425.

Affirmed.