## NORTHWESTERN MUNICIPAL ASS'N, Inc., v. UNITED STATES.

### No. 11192.

Circuit Court of Appeals, Eighth Circuit.
Nov. 9, 1938.

Hayner N. Larson, of Minneapolis, Minn. (J. B. Faegre, Donald L. Robertson and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellant.

Paul S. McMahon, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Attys., both of St. Paul, Minn., on the brief), for the United States.

Before SANBORN, THOMAS, and BOOTH, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment for the United States in an action at law brought to recover income taxes for the year 1934 and capital stock taxes for 1934 and 1935. Northwestern Municipal Association, Inc., v. United States, D.C., 22 F.Supp. 18.

The appellant, plaintiff below, was incorporated in July, 1933, under the Minnesota Business Corporation Act (Ch. 300 Laws of Minnesota 1933), with an authorized capital of 50 shares of the par value of $50 each, of which 25 shares purchased at par are held by 14 banks and investment firms resident at or near St. Paul

and Minneapolis, Minnesota. The by-laws provide for non-voting associate members of which there are six. The associate members are engaged in the same kind of business as that of the shareholders. The capital of the corporation consists of $1250 paid in by the shareholders and $1700 contributed by the associate members.

The taxpayer bases its claim that it should be allowed a refund on the ground that it is exempt from tax under the provisions of section 101(7) of the Revenue Act of 1934, 26 U.S.C.A. § 103(7), in that it is a business league, is not organized for profit, and no part of its net earnings inures to the benefit of any private individual or shareholder. The statute provides that the following organizations shall be exempt from taxation under this title: "(7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

To be exempt from taxation under this statute it is not sufficient that the organization claiming exemption be a business league. It must be a business league having two particular qualities: (1) "Not organized for profit," and (2) "no part of the net earnings of which inures to the benefit of any private shareholder or individual." Further than these two restrictions the statute furnishes no definition of a business league. Treasury Regulation 86, promulgated under the Revenue Act of 1934 provides:

"Art. 101 (7)-1. Business leagues, chambers of commerce, real estate boards, and boards of trade.—A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a co-operative basis or produces only sufficient income to be self-sustaining, is not a business league.

An association engaged in furnishing information to prospective investors, to enable them to make sound investments, is not a business league, since its activities do not further any common business interest, even though all of its income is devoted to the purpose stated. A stock exchange is not a business league, a chamber of commerce, or a board of trade within the meaning of the law and is not exempt from tax."

The first restriction of the statute, it will be observed, relates to the character of the organization and the second to its method of operation. Under the first the organization may be incorporated or unincorporated, but whatever the form it must not be organized for profit. Under the second restriction it is not prohibited from operating for profit, provided that none of its net earnings inure to the benefit of any private shareholder or individual. Regulation 86 merely amplifies the statutory definition. We do not think appellant meets either of these tests.

■ First. Appellant was organized for profit within the meaning of the statute; that is, it is "An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit."

■ The purpose of an organization must be determined from the purpose declared in the instrument creating it. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278; Retailers Credit Ass'n v. Commissioner of Internal Revenue, 9 Cir., 90 F.2d 47, 111 A.L.R. 152; Gagne, Collector of Internal Revenue, v. Hanover Water Works Co., 1 Cir., 92 F.2d 659; Sun-Herald Corporation v. Duggan, Collector of Internal Revenue, 2 Cir., 73 F.2d 298; Louisville Credit Men's Adjustment Bureau v. United States, D.C., 6 F.Supp. 196. Cf. Roche's Beach, Inc., v. Commissioner of Internal Revenue, 2 Cir., 96 F.2d 776. In Helvering v. Coleman-Gilbert Associates, supra, the court stated that [page 287]: "The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted."

The appellant was organized under the Minnesota Business Corporation Act, and in its Articles of Incorporation it declared:

"The purposes of the corporation shall be:

"To provide organized representation for holders of securities issued by the

several states of the United States, and by the Counties, Cities, Towns, Villages, School Districts, Drainage Districts and other governmental subdivisions of any and all states, and to advise and assist such security holders with respect to their financial problems and the enforcement of their obligations;

"To advise and assist the several states and their governmental subdivisions in working out their financial problems with a view to preventing defaults on their outstanding securities and to working out plans for curing defaults and refunding securities;

"To act as trustee, agent, attorney-in-fact or otherwise as representative of holders of municipal securities;

"To acquire, hold, mortgage, pledge or dispose of state and municipal securities, either on its own account or as trustee, agent, attorney-in-fact or in any other capacity as representative of the owners of such securities; and

"To do any and all things reasonably necessary or incidental to accomplish said purposes."

These declared purposes are sufficiently inclusive to permit appellant to engage in operations covering the whole field of dealings in municipal securities. There are no restrictions against profits, or the amount thereof, that might be made in any of these authorized activities, and no requirement that the corporation shall be merely self-sustaining. Under the first declared purpose it may represent as agent the holders of municipal securities with respect to their financial problems and the enforcement of the "obligations" due them. For such services it may exact compensation the same as attorneys, brokers or other agents. Under another of its declared purposes it may acquire, hold or dispose of municipal securities on its own account or for others; and there is no prohibition in its articles against its making a profit on each transaction in which it engages. This is the regular business of brokers and investment bankers "ordinarily carried on for profit."

The articles provide that "no dividend * * * shall be paid shareholders prior to the dissolution of the corporation." Upon dissolution shareholders may receive a return of their investment and "any amounts thereafter remaining shall be contributed" to some charitable organization in the city of Minneapolis. This provision, however, is not material in determining the character of the organization. Louisville Credit Men's A. Bureau v. United States, supra; Northwestern Jobbers' Credit Bureau v. Commissioner, 8 Cir., 37 F.2d 880.

■ Second. Did appellant operate or carry on its business so that none of its net earnings inured to the benefit of private shareholders or individuals?

The record shows that appellant carried on three classes of activities: (1) Preliminary investigations and advisory work; (2) assisting municipalities in refunding operations; and (3) promoting the enactment of remedial legislation.

In the first and third of these activities the appellant made no charge for its services. In the second type of activity, refunding operations, the services of appellant are performed under a written contract with the municipality. These services involve, among other things, working out the details of the refunding issue in the light of the municipality's probable ability to pay as disclosed by the preliminary investigation, securing an approving opinion of counsel, preparing a letter showing the debtor's financial condition and the proposed plan of adjustment, and mailing the letter to all known bondholders and securing their consent to the exchange of obligations. The appellant always makes a charge for such refunding operations, and on rare occasions this charge was made against the bondholders if the municipality could not afford to handle it. The testimony is to the effect that the charges for refunding services are not fixed with a view to profit to the appellant but are determined with the view of keeping it on a self-sustaining basis. Only on rare occasions are appellant's charges as much as would be charged by others.

The appellant's years of greatest activity were in 1934 and 1935. Since then there has been a decline and some thought has been given to dissolution but, to date, the corporation has not been dissolved. Practically all the appellant's receipts have been derived from fees from its refunding operations. The following is a schedule of receipts and disbursements for the years 1934 to 1937 inclusive:

| Year | Receipts | Disbursements |
|------|----------|---------------|
| 1934 | $ 8,346.73 | $4,028.24 |
| 1935 | 9,144.79 | 8,706.78 |
| 1936 | 11,727.84 | 6,268.98 |
| 1937 | 818.71 | 2,916.62 |

■ The important question here is, did the net earnings for the services so rendered inure to the benefit of private shareholders or individuals? In considering this question it must be kept in mind that the term "net earnings" may include more than the term net profits as shown by the books of the organization or than the difference between the gross receipts and disbursements in dollars. Profit may inure to the benefit of shareholders in other ways than in dividends. Northwestern Jobbers' Credit Bureau v. Commissioner, 8 Cir., 37 F.2d 880, 883; Louisville Credit Men's Adjustment Bureau v. United States, D.C., 6 F.Supp. 196; Uniform Printing & Supply Co. v. Commissioner, 7 Cir., 33 F.2d 445.

■ Under the statute, in connection with the inquiry whether the net earnings of the organization claiming exemption as a business league inure to the benefit of private stockholders or individuals, especially where its activities are multifarious and for some of which it makes a charge and for others none, the court often considers which of its activities represents the main purpose of its operations and which are incidental thereto. If its main purpose is to benefit its shareholders or individuals it is not exempt. On the other hand, if benefit to the individuals is secondary and incidental, it is exempt. Crooks v. Kansas City Hay Dealers' Ass'n, 8 Cir., 37 F.2d 83; Northwestern Jobbers' Credit Bureau v. Commissioner, 8 Cir., supra; Retailers Credit Ass'n v. Commissioner, 9 Cir., 90 F. 2d 47, 51, 111 A.L.R. 152.

It is the contention of counsel for appellant that the main purpose of its activities is to maintain sound municipal credit, a purpose which is not within the category of a regular business ordinarily carried on for profit. This contention is not supported by the record. The first purpose declared in appellant's articles of incorporation is to aid bondholders in enforcing payment of the obligations due them from municipalities. The principal end to be achieved by the incorporators was to benefit bondholders as individuals. Sound municipal credit was incidental to this primary purpose as an aid in effecting its accomplishment.

The trial court found that the appellant is a mere adjunct to the business of the several investment banking corporations and bond houses represented by their agents as shareholders or associate members; that the enterprise which was undertaken was a cooperative endeavor to render services which the separate members might have been required to furnish; and that the performance of these services at less than it would have cost the individual members to furnish inured directly to the benefit of the investment bankers. The evidence supports these conclusions. The president of appellant was the only witness to testify for the taxpayer. He testified that at about the time of and prior to the organization of appellant corporation there had been many defaults by municipalities in Minnesota, in North and South Dakota and in Montana in the payment of interest on their bonds. Each one of the investment bankers interested who had some of the bonds, or who may have had clients who held some of the bonds, would go out and make an investigation or check up on the situation when a default occurred; but they could not before the organization of appellant make any concerted action. He testified that they felt a moral obligation to help their customers. By helping them they retained their good will. Clearly their motive in organizing the corporation and in carrying on the work which it did was to benefit their customers, to minimize the cost to themselves of a service which they elected to give, and, in so far as they held the bonds of any of the defaulting municipalities, to collect interest for themselves. These were the ends which the operations of appellant sought primarily to serve. Sound municipal credit was incidental to these objectives.

Since it is clear that appellant was organized to do a regular business ordinarily carried on for profit, and since in the operation of its business its net earnings inured to the benefit of its shareholders and individuals, it was not exempt from tax under the Revenue Act of 1934.

The judgment of the district court is, therefore, affirmed.