OMAHA LIVE STOCK TRADERS EXCHANGE, Plaintiff,

v.

UNITED STATES of America,
Defendants.

Civ. No. 01569.

United States District Court
D. Nebraska.

Aug. 17, 1965.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

E. G. Garvey and James R. McGreevy, Omaha, Neb., for plaintiff.

Howard N. Singer, Atty., Dept. of Justice, Washington, D. C., Theodore L. Richling, U. S. Atty., and Russell J. Blumenthal, Asst. U. S. Atty., Omaha, Neb., for defendants.

ROBINSON, Chief Judge.

This is a suit for the recovery of federal income taxes and assessed interest paid by the plaintiff for the years 1953, 1954, 1955, 1956 and 1957, plus statutory interest thereon.

Plaintiff, Omaha Live Stock Traders Exchange, timely filed tax returns for the years 1953 to 1957 inclusive reporting a loss for each year. These returns were adjusted by the Internal Revenue Service and plaintiff was required to and did pay on March 30, 1959, the sum of Ten Thousand Sixty-eight Dollars and Thirteen Cents [$10,068.13] as income taxes and assessed interest for those years. The association timely filed refund claims with the Internal Revenue Service alleging that it was an exempt organization. The refund claims were denied.

[redacted]

The question presented is whether Omaha Live Stock Traders Exchange is an organization exempt from income taxation for the years 1953, 1954, 1955, 1956, and 1957, by virtue of § 101 [7] of the Internal Revenue Code of 1939 and § 501 [c] [6] of the Internal Revenue Code of 1954. These sections are substantially the same.

§ 501 [c] [6] of the Internal Revenue Code of 1954, 26 U.S.C. § 501 [c] [6] [1964 ed.], confers an exemption upon:

> "[6] Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

[redacted] Plaintiff's primary contention is that it is a business league and therefore exempt. "Business leagues" are defined in Treas.Reg. § 1.501 [c] [6]–1, 26 C.F.R. § 1.501 [c] [6]–1, which states:

> "A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. * * *"

This regulation must now be treated as having the force of law. Evanston-Forth Shore Board of Realtors v. United States, 320 F.2d 375 [Ct. of Claims 1963]; General Contractors' Ass'n of Milwaukee v. United States, 202 F.2d 633 [7th Cir. 1953].

■ In order for an organization to be exempt as a business league it must therefore meet six requirements: [1] it must be an association of persons having a common business interest, [2] its purpose must be to promote that common business interest, [3] its activities should be directed toward the improvement of business conditions in one or more lines of business as distinguished from the performance of particular services for individual persons, [4] it should not be engaged in a regular business of a kind ordinarily conducted for profit, [5] it must not be organized for profit, and [6] its net earnings, if any, must not inure to the benefit of any private shareholder or individual. United States v. Oklahoma City Retailers Association, 331 F.2d 328 [10th Cir. 1964]; American Automobile Association, 19 T.C. 1146, 1158 [1953]; See 6 Mertens, The Law of Federal Income Taxation, § 34.20 [1957].

■ A tax exemption statute is to be strictly construed and any doubt must be resolved in favor of the government. American Automobile Association, 19 T.C. 1146, 1158 [1953]; American Fisherman's Tuna Boat Ass'n v. Rogan, 51 F.Supp. 933 [9th Dist.Cal.1943].

■ Whether an association is entitled to income tax exemption as a business league or board of trade is a question of fact to be determined from the evidence and each case must stand on its own facts. American Fisherman's Tuna Boat Ass'n v. Rogan, supra.

The Omaha Live Stock Traders Exchange, an unincorporated association under the laws of Nebraska, was originally organized in 1903. Membership in this association is limited to individuals who are engaged in the buying and selling of livestock at the Union Stock Yards in Omaha, Nebraska. These members, or traders as they are often called, buy cattle on order for a commission and also for their own feeding, trading, and selling.

Rule three of the plaintiff's by-laws sets forth the objects of the organization. It states:

"The objects of the association are: To maintain a business exchange, not for pecuniary profit or gain, but to promote and protect all interests connected with the buying and selling of livestock at the Union Stock Yards, Omaha, Nebraska; to establish uniformity in the customs and usages of trade at said market; to simplify business transactions; to inculcate and enforce correct and high moral principles in the transaction of business; to inspire confidence in the methods and integrity of its members; to facilitate the speedy adjustment of business disputes; and generally to secure to its members and patrons the benefits of cooperation in the furtherance of their legitimate pursuits."

■ Where there is no allegation or showing of an attempted tax evasion the objects as stated in the by-laws should be given great weight in determining the true purpose of the association. Northwestern Municipal Ass'n v. United States, 99 F.2d 460 [8th Cir. 1938].

Besides regulating the conduct of its members the association has engaged in other activities. Among these are the settling of disputes between members and non-members; the giving of demonstrations and talks before college 4-H and other groups; support of 4-H Clubs and the Ak-Sar-Ben Live Stock Show; financial support to the Omaha Livestock Foundation, which advertises the complete Omaha market; and, at times, the dissemination of market news on stocker and feeder cattle.

During the years in question plaintiff had between 128 and 168 members. Membership cost three thousand dollars [$3,000] if bought outright. However, for those who chose not to buy or could not afford to, a membership could be rented at a cost of twenty dollars [$20] a month. All members were required to pay a due of twenty-five [$25] dollars

a year. Advertising assessments were levied on each individual according to the number of cattle which he had purchased on the Omaha market; this assessment went to the support of the Omaha Livestock Foundation. If an individual wished to transfer his membership to another person a fee of fifty dollars [$50] was charged.

The income of the plaintiff for these five years involved consisted entirely of transfer fees, advertising assessments, rent on redeemed memberships, the sale of memberships, and interest on United States obligations which it held. Except for the interest on the government obligations all of plaintiff's income was derived exclusively from its members. The taxable income as adjusted by the Internal Revenue Service for these tax periods was $8,858.63 for 1953; $9,312.27 for 1954; $5,336.29 for 1955; $2,776.19 for 1956; and $1,029.09 for 1957. Plaintiff's income before expenses as shown by defendant's exhibit thirty-one [31] was only $17,854.97 for 1953; $17,246.48 for 1954; $12,408.76 for 1955; $15,248.09 for 1956; and $10,628.43 for 1957.

At the end of the 1957 tax period the plaintiff had retained earnings of over $130,000. This fund in almost its entirety was invested in United States obligations. There is a long standing practice in the plaintiff association [this practice is provided for by rule eleven of the by-laws] whereby upon the death of a member his membership will be redeemed by the association for $2500. At no time has the plaintiff ever had enough funds on hand to redeem all of its memberships at this price. The purpose of the retained earnings is to enable the plaintiff to be able to redeem its memberships.

Defendant has not contended that the plaintiff was organized for profit nor is there any indication that such is the case. The association does not have any shares of stock, nor has it ever declared any dividends. The only officer to ever receive a salary was the Secretary-Treasurer who worked part time for the plaintiff and was paid accordingly for his services.

The defendant has strongly contended that the net earnings of the plaintiff inured to the benefit of its members. The net earnings may inure to the benefit of members in other ways than in dividends, Northwestern Municipal Ass'n v. United States, 99 F.2d 460, 463 [8th Cir. 1938]. Here the earnings of the association could inure to its members either by the rendition of services or the disbursement of money.

 Some of plaintiff's activities, such as the advertising of the stocker and feeder market and the settling of disputes, can be considered as services which were also of benefit to the members. Human experience has taught us that few men would join an organization if they did not derive at least some benefit out of it. As regards such a rendition of services Judge Thomas in Northwestern Municipal Ass'n v. United States, 99 F.2d 460 [8th Cir. 1938] stated:

"Under the statute, in connection with the inquiry whether the net earnings of the organization claiming exemption as a business league inure to the benefit of private stockholders or individuals, especially where its activities are multifarious and for some of which it makes a charge and for others none, the court often considers which of its activities represents the main purpose of its operations and which are incidental thereto. If its main purpose is to benefit its shareholders or individuals it is not exempt. On the other hand, if benefit to the individuals is secondary and incidental, it is exempt."

It has become settled that where the services are only secondary or incidental an exemption can not be denied. Northwestern Municipal Ass'n v. United States, supra; Commissioner of Internal Revenue v. Chicago Graphic Arts Federation, Inc., 128 F.2d 424 [7th Cir. 1942].

The Court finds as a fact that the primary purpose of the plaintiff was the improvement of business conditions in the traders' line of business, and that the services which may be of benefit to the members were only incidental and subordinate to this main objective.

■ In 1953, 1954 and 1955 none of the members outside of the Secretary-Treasurer received any cash disbursement by the association either directly or indirectly. During these years, as previously mentioned, upon the death of a member the association would redeem the membership for $2500, and a beneficiary, the member's estate, or some other party would receive this sum. The Court looks upon this $2500 as a refund and does not believe it sufficient as such to deprive the association of a tax exemption.

■ In 1956 and 1957, however, a few of plaintiff's members were involved in a legal action in which the merits and legality of the "turn system" was disputed. For the outcome of that action see Berigan v. United States, 257 F.2d 852 [8th Cir. 1958]. The "turn system" was a manner by which members would determine their places in line at a pen by the flipping of a coin. This system was authorized by plaintiff's rules but was not made mandatory and all members did not engage in it. The attorneys who represented the members in this legal action were paid by the plaintiff even though the plaintiff was not a named party to the controversy. Plaintiff contends that it did this as the outcome of the action was of importance to itself and the market. We agree with plaintiff's contention. Some type of turn system has been used on many of the markets in the midwest. A complete and proper adjudication of the legality of such a system was important to the traders' line of business and to the market industry. The attorney fees were not paid to benefit the individuals in the controversy but were paid to insure a full determination of the dispute. The primary purpose for the payment of these attorney fees was the benefit of the industry, and only incidentally did it benefit the actual parties to the suit. Because the primary purpose was the benefit of the industry and the traders' line of business we do not believe that the payment of these fees is sufficient to deprive the plaintiff of an exemption for these years.

The defendant contends that because of the "turn system" the plaintiff should not be entitled to any exemption. While the system was provided for in plaintiff's by-laws, as previously pointed out, it was not mandatory nor did all of the plaintiff's members engage in it. Some type of "turn system" has been employed on several of the markets throughout the country. We do not believe that the mere provision for the discretionary use of the system by its members is sufficient to deny the plaintiff an exemption.

■ The Court finds that the plaintiff is an association of persons having a common business interest; that the primary purpose of the plaintiff is the promotion of their common business interest and the improvement of business conditions in their line of business; that plaintiff is not organized for profit nor does it engage in a regular business of a kind ordinarily conducted for profit; and that the net earnings did not inure to the benefit of any individual during the years of 1953, 1954, 1955, 1956, and 1957.

It is the determination of the Court that plaintiff was entitled to a tax exemption for the years of 1953, 1954, 1955, 1956 and 1957; and that the plaintiff is therefore entitled to a refund of its payments for those years plus statutory interest thereon.

This Court has jurisdiction of this case under 28 U.S.C.A. § 1346[a] [1].

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52[a] of the Federal Rules of Civil Procedure. Counsel for the plaintiff will prepare and submit an order of judgment within fifteen [15] days.