**UNITED STATES of America, Appellant,**

v.

**OMAHA LIVE STOCK TRADERS EXCHANGE, Appellee.**

**No. 18271.**

United States Court of Appeals
Eighth Circuit.

Oct. 13, 1966.

Thomas Silk, Jr., Atty., Tax Div., Dept. of Justice Washington, D. C., for appellant. Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Tax Div., Dept. of Justice, Washington, D. C., and Theodore L. Richling, U. S. Atty., and Russell J. Blumenthal, Asst. U. S. Atty., Omaha, Neb., were with him on the brief.

James R. McGreevy, Omaha, Neb., for appellee. Edward G. Garvey, Omaha, Neb., was with him on the brief.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and LAY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by the Government from final judgment awarding taxpayer, Omaha Live Stock Traders Exchange, judgment for $10,068.13 for refund of income taxes and interest assessed to and paid by the taxpayer for the years 1953 through 1957. Jurisdiction is established under 28 U.S.C.A. § 1346. Taxpayer filed a timely claim for refund; payment was denied and this suit was brought within the time allowed by law.

The basic issue before the trial court was whether the taxpayer is exempt from income taxation for the years in controversy as a business league under the provisions of § 101(7) I.R.C.1939 and its substantially similar successor, § 501(c)(6) I.R.C.1954, which includes in organizations exempt from taxation the following:

"(6) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual".

The interpretation of such exemption statute and the application of the statute as interpreted to the facts of the case is here involved.

Judge Robinson, who heard this case which was tried without a jury, filed a memorandum opinion reported at 244 F. Supp. 384, which includes his findings of fact and conclusions of law and determines that the taxpayer is entitled to the business league exemption as claimed.

The Government urges that the trial court erred in allowing the business league exemption from taxation because (A) taxpayer has been administratively and judicially determined to have engaged in trade practices which were illegal, discriminatory, and restrictive of free competition; and (B) taxpayer's trade practices actually harm rather than improve business conditions in its line of business.

The Government's attack upon taxpayer's claim of exemption is based upon the fact that the Department of Agriculture in an administrative hearing determined that some of taxpayer's members pursuant to a by-law of taxpayer were illegally determining which of its members would have the first opportunity to negotiate for the purchase of livestock offered for sale by means of the flip of a coin. Persons not members of taxpayer were not permitted to participate in the flipping. The administrative order required each respondent in the proceeding to

cease and desist from engaging in the flipping practice.[1]

Upon review, this court upheld the determination that the flipping practice was illegal. Berigan v. United States, 8 Cir., 257 F.2d 852. *Berigan* was decided by us on August 13, 1958. It would appear that the flipping practice ceased after the filing of our opinion. See McCleneghan v. Union Stock Yards of Omaha, 8 Cir., 349 F.2d 53, 54.[2]

▮ It is now established beyond question that the flipping system engaged in by certain members of the taxpayer during the tax years in question is illegal. Prior to the final adjudication of this issue in *Berigan,* a bona fide question existed as to the legality of the system. Taxpayer, who was not a named party to the proceeding, employed and compensated counsel for services rendered in the litigation. We find nothing in the relevant exemption statute before us or the applicable regulations which withdraws the exemption if the taxpayer has committed an illegal act in connection with one of a number of activities in which it engages. We believe the rationale of Commissioner of Internal Revenue v. Tellier, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185, where a business deduction was upheld for attorneys' fees for an unsuccessful defense of a criminal charge, has some application here. If public policy does not require the disallowance of the deduction in *Tellier*, it should have no conclusive effect upon the exemption here.

▮ With respect to point (B), the short answer is that no finding has been made nor is such a finding compelled as a matter of law upon this record to the effect that on an overall basis the taxpayer's activities harmed rather than improved business conditions in its line of business. To the contrary, as we point out hereinafter, the trial court actually found that taxpayer's practices complained of were only incidental and subordinate.

There remains for consideration the primary issue of whether Judge Robinson's decision was induced by an erroneous interpretation of the statute and if not, whether his controlling findings lack substantial evidentiary support. We believe that the reported opinion properly interprets the pertinent statute. The statute, the supporting regulation and the requirements for establishing the exemption are properly set out with supporting authorities in the trial court's well-considered opinion. Judge Robinson makes an ultimate finding adverse to the Government with respect to compliance with all requirements for the exemption, such finding reading:

1. The decision directing the order contained the following observations and no other sanctions were imposed:

   "The record indicates that the practice followed by dealers at the stockyard of determining turns to look at, bid on and buy stocker and feeder cattle by flipping coins is one of long standing and existed during the period involved herein at six other major stockyards. The practices which have been found herein to be violative of the act are not specifically declared to be invalid in the amended regulations issued pursuant to the act in 1954 (9 CFR, 1956 Supp., 201 et seq.). Moreover, the memorandum of the market supervisor at the stockyard addressed to all the registrants on the Omaha market was not issued, and did not call for the elimination of the 'turn system' as it existed, until after most of the transactions alleged in the complaint had occurred. Furthermore, the investigation of the 'turn system' was directed at Berigan Brothers Livestock Commission Company by chance as it was recognized that other market agencies probably engaged in the violations of the act alleged herein. While this fact does not make the practices of Berigan Brothers and the respondent dealers any less violative of the act, such fact should be considered in determining the sanction to be imposed. In view of all these and additional facts and circumstances in the record, we conclude that suspension of the respondents' registrations should not be ordered."

2. Full information as to the flipping system and the enforcement proceedings based thereon may be found in the *Berigan* and *McCleneghan* cases cited in the body of the opinion.

"The Court finds that the plaintiff is an association of persons having a common business interest; that the primary purpose of the plaintiff is the promotion of their common business interest and the improvement of business conditions in their line of business; that plaintiff is not organized for profit nor does it engage in a regular business of a kind ordinarily conducted for profit; and that the net earnings did not inure to the benefit of any individual during the years 1953, 1954, 1955, 1956, and 1957." 244 F. Supp. 384, 388.

The Government in its brief seems to place principal reliance upon the statutory requirement that no part of the net earnings of taxpayer inure to the benefit of any shareholder or individual. It clearly appears that the taxpayer is not organized for profit and that there is no basis for any dividend or direct payment of any profits to shareholders or individuals. The cases recognize that in practically all situations many of the services performed by a business league benefit the league members as well as the public generally.

Judge Robinson quotes and applies the test stated by this court in Northwestern Municipal Ass'n v. United States, 8 Cir., 99 F.2d 460, 463, as follows:

"'Under the statute, on connection with the inquiry whether the net earnings of the organization claiming exemption as a business league inure to the benefit of private stockholders or individuals, especially where its activities are multifarious and for some of which it makes a charge and for others none, the court often considers which of its activities represents the main purpose of its operations and which are incidental thereto. If its main purpose is to benefit its shareholders or individuals it is not exempt. On the other hand, if the benefit to the individuals is secondary and incidental, it is exempt.'" 244 F.Supp. 384, 387.

The test is approved and followed in Evanston-North Shore Board of Realtors v. United States, Ct.Cl., 320 F.2d 375,

378, 380; General Contractors' Ass'n v. United States, 7 Cir., 202 F.2d 633, 637; Commissioner of Internal Revenue v. Chicago Graphic Arts Fed'n, 7 Cir., 128 F.2d 424, 427. See also to like effect, Texas Mobile Home Ass'n v. Commissioner of Internal Revenue, 5 Cir., 324 F.2d 691; Crooks v. Kansas City Hay Dealers' Ass'n, 8 Cir., 37 F.2d 83.

The determination of which activities of a business league are primary and which are incidental ordinarily presents a fact issue and each case must stand upon its own facts. General Contractors' Ass'n v. United States, supra; Commissioner of Internal Revenue v. Chicago Graphic Arts Fed'n, supra.

In Evanston-North Shore Board of Realtors v. United States, supra, at p. 380 of 320 F.2d, the court speaking through Mr. Justice Reed states:

"Nonetheless, it is true that an organization whose principal purpose and activity is such as to justify exemption does not lose its exempt status by engaging in incidental activity which standing alone would be subject to taxation. Retailers Credit Assn. v. Commissioner [of Internal Revenue], 90 F.2d 47 (C.A.9, 1937); Associated Industries of Cleveland v. Commissioner [of Internal Revenue,] 7 T.C. 1449, 1467 (1946); cf. Trinidad v. Sagrada Orden de Predicadores, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458 (1924)."

In our present case, the trial court specifically found:

"The Court finds as a fact that the primary purpose of the plaintiff was the improvement of business conditions in the traders' line of business, and that the services which may be of benefit to the members were only incidental and subordinate to this main objective." 244 F.Supp. 384, 388.

■ Such finding is supported by substantial evidence, some of which is summarized in the trial court's opinion. Our examination of the record satisfies us that there is evidence that the taxpayer's activities have materially contributed to the strengthening of the Omaha

livestock market in making it the largest livestock market in the world.

The Goverment has failed to demonstrate that the trial court's opinion is clearly erroneous.

The judgment is affirmed.