Carlos and Jacqueline **MARCELLO** et al.,
Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE**, Respondent.

Joseph, Jr. and Anastasia **MARCELLO**,
Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE**, Respondent.

Nos. 23152, 23153.

United States Court of Appeals
Fifth Circuit.

June 16, 1967.

Rehearings Denied Aug. 29, 1967.

deQuincy V. Sutton, Meridian, Miss., for petitioners.

Mitchell Rogovin, Asst. Atty. Gen., Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Donald W. Williamson, Jr., Attys., Dept. of Justice, Lester Uretz, Chief Counsel, IRS, Glen E. Hardy, Atty., IRS, Washington, D. C., for respondent.

Before RIVES, COLEMAN and GOD-BOLD, Circuit Judges.

RIVES, Circuit Judge:

The taxpayers seek a review of a Tax Court decision holding each of them liable for deficiencies in income tax and some of them liable for penalties pursuant to Sections 6651(a) and 6653(a) of the 1954 Internal Revenue Code.[1] There are seven distinct and unrelated issues involved. To facilitate our disposition of this case, we take up each matter separately.

I. Recognition of Gain on the Sale of
 Carlos and Jacqueline
 Marcello's Residence.

Carlos Marcello purchased a residence in July 1946 for $42,500 and sold it in December 1958 for $101,963.85. An Act of Sale, dated March 31, 1958, reflects that Louisa Marcello, Carlos' mother, purchased in her name a residence in Metairie, Louisiana, for $110,000. Louisa in a notarized affidavit deposed that the title to this property was placed

---

1. The two cases are the second and third of four related cases involving the Marcello family. The other two, also decided this day, are Vincent and Sadie Marcello v. Commissioner of Internal Revenue, No. 23151, 5 Cir., 380 F.2d 494, and Peter J. and Penny Marcello v. Commissioner of Internal Revenue, No. 23154, 5 Cir., 380 F.2d 509.

in her name for convenience only; that the property was bought by and for the account of Carlos Marcello; that Carlos paid the purchase price; that she agreed to bind herself, her heirs, executors and administrators to convey such property to Carlos, his heirs, executors and assigns whenever required to do so; and that, in making such conveyance to Carlos, no consideration is to be paid though one might be stipulated and declared to be paid in the deed of conveyance.

Section 1034(a) of the 1954 Internal Revenue Code, 26 U.S.C.A. § 1034(a), provides that if within a year before or after the sale of a taxpayer's residence, the taxpayer purchases and uses a new residence, the gain on the sale of the old residence to the extent of the cost of purchasing the new residence is not recognized.[2]

The Tax Court held that Carlos and Jacqueline failed to prove that they purchased the new residence. Though the Tax Court found that Carlos made periodic mortgage payments for the new residence, it did not find that these payments were for his purchase of the new house. Neither was there a finding that Carlos and Jacqueline made an initial down payment, as claimed by the taxpayers. The Commissioner suggests that the mortgage payments could either have

been means of paying rent to Louisa or repayments of a loan.[3] We do not speculate on the reasons Carlos made these mortgage payments. We do agree, however, with the Tax Court that within the meaning of Section 1034 Carlos was not the purchaser of the new residence.

 The aim of Section 1034 is not to ignore the realization of gain but only to postpone recognition thereof and to defer the tax.[4] A taxpayer is not entitled to the postponement benefit unless he purchases a new residence within the subscribed time period. Congress intended to enable homeowners to use the sales proceeds from a sale of the old residence for buying their own home. The purpose of Section 1034 was not to permit a taxpayer to re-invest the proceeds from the sale of his home in the home of another person without recognizing for federal income tax purposes the gain realized by the sale.[5] The clear statutory language requires that a new residence be *purchased* and *used* by the taxpayer. That the residence must be owned by the taxpayer is made evident by the exception in subsection (g) of Section 1034 permitting either the husband or the wife to hold the residence in his or her name.[6] If a third party owns the residence, the purchase requirements are not met.[7]

---

2. See 3 Mertens, Law of Federal Income Taxation §§ 20.182–20.191.

3. The Commissioner points out that Carlos owed his mother $35,000.

4. The nonrecognized gain may become taxable when the new residence is sold or disposed of. 3 Mertens, Law of Federal Income Taxation § 20.182.

5. See Rev.Rul. 55–37, Cum.Bull. 1955–1, pp. 347, 348.

6. See Section 1034(f), I.R.C.1954, 26 U.S.C.A. § 1034(f), providing, in effect, that holders' stock in a cooperative housing corporation are eligible for the benefits of subsection (a), assuming the occupancy prerequisite is met.

7. We would be persuaded to find for the taxpayer if he had purchased legal title within the prescribed period. Reg. § 1.-1034-1 (c) (3) (i); Joint Committee

Staff Summary of Provisions of the Revenue Act of 1951, Cum.Bull.1951–2, pp. 287, 309. See Mertens, Law of Federal Income Taxation § 20.185.

The fact that Carlos was beneficiary under an affidavit purporting to set up a trust relationship does not make him a purchaser of the property. There may be situations where a beneficiary of a trust document is a purchaser. For example, a taxpayer may have a recorded title subject to a duly recorded deed of trust or mortgage. Though according to state law, the taxpayer's title may be denominated "equitable" and the title of the trustee or mortgagee considered to be "legal", we have no doubt that section 1034 would be applicable. The facts of this case reveal that Louisa and Carlos could ignore the unrecorded affidavit, permit Louisa to sell the property in her name to a third party, and thereby possibly avoid Carlos' capital gain. We do

## II. Interest Expenses of Carlos and Salvador's Motel.

Carlos Marcello and Salvador Marcello, along with two other persons, operated as partners the Town and Country Motel. The Commissioner disallowed certain deductions taken by the partnership and thereby increased the distributive share to Carlos and Salvador.

■ The Tax Court, applying the so-called Cohan[8] rule, found that the partnership was entitled to deductions for interest expenses in the amount of $5,000 for each taxable year ending January 31, 1956, 1957, 1958 and 1959.[9] Specifically, the Tax Court found that the taxpayers did not support their claim for the full amount deducted:

"While there are a number of loans made by the partnership which actually relate to its business, there is a failure of proof in establishing a connection between a particular interest payment, the loan on which it is being made, and whether or not that loan is connected with the business of the motel. Even as to those loans which were shown to be related to the motel's business, we are unable to ascertain the exact amounts of interest paid during the years involved."

We find that the Tax Court made a correct estimate of what interest was attributable to partnership borrowings.[10]

## III. The Section 6651(a) Penalty Assessed Against Carlos and Jacqueline Marcello.

Carlos and Jacqueline Marcello filed their 1959 joint tax return late, thereby incurring a penalty pursuant to Section 6651(a) of the 1954 Internal Revenue Code. That section provides for a 5% penalty of the tax owed for each month or fraction thereof that the return is filed late. The Commissioner determined that the return was one month and three days late, so that the penalty is 10%. The taxpayers contend that the return was less than one month late, so that the penalty should be 5%. We agree with the Commissioner that the procrastination cost the taxpayers a two-month penalty.

■ As a result of a properly granted extension, Carlos and Jacqueline had until September 15, 1960, to file their 1959 joint return. They desired even more time to prepare their return. In a letter dated September 23, 1960, their local district director refused the request for a further extension, but did advise the taxpayers that the return would be considered timely filed if it were received by his office within ten days of the date of the letter. The return was not filed until October 18, 1960, one month and three days after the September 15 filing date.

The taxpayers contend that the ten-day grace period extended their filing date to October 3. They assume that the district director's letter was an extension of time for filing a return within the meaning of Section 6081(a). Their assumption is wrong. The director expressly refused to grant an extension beyond September 15. Exercising his discretion, he, in effect, said that he would not invoke the sanctions of § 6651(a) if the return was filed within ten days. The taxpayers,

---

not speculate whether an attempt to avoid the tax would have occurred or even if the gain would actually go unrecognized. We merely hold that this unrecorded affidavit does not justify a claim that the affidavit's beneficiary, Carlos, is a purchaser who can take advantage of section 1034.

8. Cohan v. Commissioner of Internal Revenue, 2 Cir. 1930, 39 F.2d 540.

9. The partnership had deducted $7,581.37 (1956); $8,644.22 (1957); $12,444.42 (1958); and $5,055.18 (1959). Carlos

and Salvador do not appeal the disallowance of deductions taken for travel and entertainment expenses.

10. The taxpayers, Carlos and Salvador, contend that it makes no difference whether the loans were to the partnership or to individual partners, on the theory that partnership expenses are deductions to the partners in the long run. This argument is clearly wrong. The interest expense of partner A cannot be deducted by the partnership so as to lessen the taxable income of partner B.

though not adhering to the conditions of that offer, still wish to reap its benefits. This we do not permit. The logical extension of the taxpayers' argument leads to an unacceptable result. Under their theory, the filing became overdue as of October 3. They thereby would obtain an eighteen-day extension.[11] Surely the district director did not intend or contemplate such a result. We find no such extension to be warranted by the facts. In short, the taxpayers have not shown that their failure to file was due to reasonable cause.[12]

IV. Carlos Marcello's Attorney Fees.

Carlos and Jacqueline deducted certain attorney fees as expenses within the meaning of Sections 162(a) and 212 of the 1954 Internal Revenue Act. The Commissioner disallowed the deductions on the grounds that the expenditures were neither business expenses nor incurred in the production or collection of income.

■■ The involved fees were paid by Carlos in 1957 and 1958 in resisting deportation. The taxpayers claim that these fees were directly related to Carlos's numerous and rather intricate business ventures in Louisiana. In their brief, the taxpayers insinuate that the deportation proceedings were motivated by alleged illegal activities committed by Carlos as a partner in one of his sundry businesses. There is no evidence in the record, however, that the deportation action originated out of any business or income-producing transactions.[13] When a taxpayer claims a Section 162(a) deduction, he has the burden to prove that the expense in question has a business origin.[14] If the expenses are of a personal nature, there may be no deduction pursuant to Section 162(a).[15]

■ There is a further contention that deportation was vigorously resisted not because Carlos enjoyed the comforts and sanctity of the United States, but so that he could personally operate his businesses and conserve his income-producing property. The taxpayer's argument has no merit. In Commissioner of Internal Revenue v. Tellier, 1966, 383 U.S. 687, 689, 86 S.Ct. 1118, 16 L.Ed.2d 185, the Supreme Court, quoting from Gilmore v. United States, 1962, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570, noted that "origin and character of the claim with respect to which an expense was incurred, *rather than its potential consequences upon the fortunes of the taxpayer* is the controlling basic test of whether the expense was 'business' or 'personal' within the meaning of § 162 (a)." (Emphasis added.) If the taxpayers were correct, then even expense incurred in resisting a murder charge could be a business expense on the theory that incarceration would take the defend-

11. September 15 to October 3.

12. Logan Lumber Co. v. Commissioner of Internal Revenue, 5 Cir. 1966, 365 F.2d 846; Breland v. United States, 5 Cir. 1963, 323 F.2d 492, 497. See 3 A.L.R.2d 617 for a discussion on what amounts to "reasonable cause" for failure to file tax returns.

13. See Commissioner of Internal Revenue v. Tellier, 1966, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185; Gilmore v. United States, 1962, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570; United States v. Patrick, 1963, 372 U.S. 53, 83 S.Ct. 618, 9 L.Ed.2d 580; United States v. Omaha Live Stock Traders Exchange, 8 Cir. 1966, 366 F.2d 749; Finger v. United States, D.S.C.1966, 257 F.Supp. 312. Cf. Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467; 64 S.Ct. 249, 88 L.Ed. 171; see also Lilly v. Commissioner of Internal Revenue, 1951, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769.

14. Cf. Interstate Transit Lines v. Commissioner of Internal Revenue, 1942, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; Peckham v. Commissioner of Internal Revenue, 4 Cir. 1964, 327 F.2d 855; Finger v. United States, D.S.C. 1966, 257 F.Supp. 312.

15. For a distinction between a private wrongdoing as opposed to a public wrongdoing, see Cornelius Vanderbilt, Jr., T.C. Memo 1957–235. See Rev. Rule 66–330, 1966 I.R.B.–45, p. 5; 4A Mertens, Law of Federal Income Taxation § 25.50.

ant away from his business location. We refuse to travel to such a destination.[16]

### V. Carlos and Jacqueline Marcello's Personal Expenses.

The Commissioner disallowed as deductions numerous expenses incurred by Carlos and Jacqueline Marcello on the ground that they were not business expenses. We agree with the Tax Court's conclusion that "There is nothing upon which we can base a conclusion that [Carlos's] expenses were unreimbursed business expenses."[17]

### VI. Penalties Assessed Pursuant to Section 6653(a).

Various members of the Marcello family were assessed with a 5% penalty pursuant to Section 6653(a) of the 1954 Internal Revenue Code.[18] With regard to Salvador Marcello, the Tax Court found that his failure in 1958 and 1959 to properly report his proportionate share of partnership income was due to negligence and, further, that he was partly responsible for the partnership's failure to keep adequate records. The Tax Court found that Joseph Marcello, Jr. failed to keep adequate records of his business expenditures and that the overstatement of corresponding deductions on his 1958 tax return was due to negligence. Finally, the Tax Court held that, as to Vincent Marcello, the presumption of correctness attributed to the Commissioner's determination had not been overcome

and, therefore, the penalty must be sustained.

The taxpayers advanced a three-pronged attack on the Tax Court findings. In capsule form, their arguments are that (a) the facts do not support a holding that the taxpayers *intended* to disregard rules and regulations; (b) the *Commissioner* has the burden to show an intent to disregard rules and regulations; and (c) since Section 6653(a) is worded in the disjunctive, the Commissioner must indicate on the statutory deficiency notice which violation allegedly occurred.

The Commissioner parries with the claim that the taxpayers bear the burden to show that no negligence or intentional disregard of rules and regulations occurred. The Commissioner suggests that intent can be exhibited either by circumstantial evidence or by presuming the correctness of the Commissioner's determination.

Sweeping aside the various overlapping arguments offered by the taxpayers, we observe that their real complaint is that in the deficiency notice the Commissioner merely cited Section 6653(a) without denoting what elements of the section were violated. The taxpayer's argument, as we understand it, proposes that a taxpayer cannot adequately and properly defend against the assessment of a Section 6653(a) penalty unless he knows upon what part or parts of the section the Commissioner relies. This argument

16. The Tax Court found that the deportation proceedings were not connected with Carlos's business. This second contention must fall, therefore, for the additional reason that the Tax Court's finding that the expenditure was not directly related to the taxpayer's business was a finding of fact not shown to be clearly erroneous. See 26 U.S.C.A. § 7482; Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171.

17. See Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Mayrath v. Commissioner of Internal Revenue, 5 Cir. 1966, 357 F.2d 209. Cf. Kornhauser v. United States, 1928, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505; New Colonial Ice Co. v. Helvering, 1934, 292

U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Interstate Transit Lines v. Commissioner of Internal Revenue, 1942, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607.

18. Section 6653. Failure to Pay Tax.
 "(a) *Negligence or intentional disregard of rules and regulations with respect to income or gift taxes.*—If any part of any underpayment (as defined in subsection (c) (1)) of any tax imposed by subtitle A or by Chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard to rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 per cent of the underpayment."

assumes that the Commissioner has the burden if he asserts a violation of the latter part, while the taxpayer has the burden only if the Commissioner asserts a violation of the first part.

There is no dispute that the taxpayer has the burden if he is accused of being negligent in regard to the making out of his tax return.[19] The authorities indicate that the taxpayer also has the burden to show that he did not intentionally disregard rules and regulations.[20] The latter segment of the disjunctive clause is usually brought into play when a taxpayer who is aware or should be aware of a rule or regulation chooses to ignore its requirements.[21] The taxpayer can avoid the penalty by showing no intent to disregard the rule or regulations involved.[22] The penalty may possibly be avoided if the taxpayer because of a mistaken conception of his legal rights failed to follow the rules or regulations.[23] Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.[24] Thus, a taxpayer may not be negligent but still intentionally disregard rules and regulations, thereby violating Section 6653(a).

We now reach the crux of the problem. If the taxpayer has the burden regardless of which element of Section 6653(a) is the basis of the assessment, need the Commissioner do more than merely cite that section in his deficiency notice?

19. Gibbs v. Tomlinson, 5 Cir. 1966, 362 F.2d 394; Lusk v. Commissioner of Internal Revenue, 7 Cir. 1957, 250 F.2d 591, cert. den., 357 U.S. 932, 78 S.Ct. 1376, 2 L.Ed.2d 1375; Boynton v. Pedrick, 2 Cir. 1955, 228 F.2d 745; David Courtney, 28 T.C. 658 (1957). Balter, Tax Fraud and Tax Evasion § 8.2–3. See Niles Bement Pond Co. v. United States, 1930, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901.

20. Boynton v. Pedrick, 2 Cir. 1955, 228 F.2d 745, cert. den., 351 U.S. 938, 76 S.Ct. 835, 100 L.Ed. 1465, rehearing den., 351 U.S. 990, 76 S.Ct. 1046, 100 L.Ed. 1503; Jacobs v. United States, 1954, 126 F.Supp. 154, 159, 131 Ct.Cl. 1. See 10 Mertens, Law of Federal Income Taxation § 55.-25; Balter, Tax Fraud and Tax Evasion §§ 8.2–3, 10.4–4. Cf. Helvering v. Mitchell, 1938, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. Where the Commissioner asserts a fraud penalty pursuant to Section 6653(b), he has the burden of proving that the facts warrant the imposition of that penalty. Section 7454 (a). The intent of Section 6653(a) may be discerned from the failure of the taxpayer to do what the rule or regulation requires. The penalty may be avoided by the taxpayer showing that he had no intent to disregard rules or regulations or by excusing his actions with an acceptable and justified reason, such as have been accepted by courts in the past. See Nessen, "The Line Between Negligence and Civil Fraud: The Operation of Two Penalty Provisions Against Underpaying Taxpayers." 20 N.Y.U.Inst. on Fed.Tax. 1117.

21. In Journal Co., 46 B.T.A. 841; George G. Ebner, T.C.Memo 1958–108; Rudolph A. Zivnuska, 33 T.C. 226 (1959).

22. Admittedly, this is extremely difficult. Recognizing the problem faced by the taxpayer who has the burden to show he had no intent to disregard rules or regulations, the Senate Finance Committee in 1954 proposed an amendment to what is now Section 6653(a). The amendment provided that the penalty would not be imposed where the taxpayer intentionally disregarded rules and regulations because of a belief of their invalidity. To avoid the penalty, however, the amendment made it incumbent upon the taxpayer to attach to his return an adequate statement setting forth the rules and regulations disregarded and the grounds for believing them to be invalid. See Sen.Rep. No. 1622, 83rd Cong., 2nd sess., p. 591; U.S.Code Cong. & Ad.News, 83rd Cong., 2nd sess., pp. 4781, 5240. This amendment was deleted in conference. H.Rep. No. 2543, 83rd Cong., 2nd sess., p. 80; U.S.Code Cong. & Ad.News 1954, 83rd Cong., 2nd sess., p. 5342.

23. See Bennett v. Commissioner of Internal Revenue, 8 Cir. 1944, 139 F.2d 961.

24. Southeastern Finance Co. v. Commissioner of Internal Revenue, 5 Cir. 1946, 153 F.2d 205. Cf. Evans v. Commissioner of Internal Revenue, 8 Cir. 1956, 235 F.2d 586, cert. den., 352 U.S. 909, 77 S.Ct. 147, 1 L.Ed.2d 118.

In this case, the Commissioner relied on both segments of the section.[25] He need not have quoted the section verbatim. Citing the appropriate section number was sufficient to notify the taxpayers that the 5% addition to their taxes was for violating both segments of Section 6653(a).[26] The taxpayers had the burden to show that their underpayment was due neither to negligence nor intent to disregard rules and regulations.[27]

As for the Tax Court's specific findings that the taxpayers negligently understated their taxable income, we find no error. On the contrary, the record shows a failure to keep books and documents necessary to form a rational basis for the income reported and the expenses deducted.[28]

The Commissioner's determination shifts the burden of going forward to the taxpayer.[29] After the taxpayer produces his evidence, the Commissioner may elect to produce no rebuttal evidence, being content that the taxpayer has not shown the Commissioner's determination to be erroneous. The Tax Court is then free to reach its decision on the basis of whether the entire record indicates that the Commission's determination was in error.[30] The Tax Court will consider two factors in making its decision: (1) that the Commissioner's determination at the beginning of the proceedings was presumed to be correct, and (2) that the burden of proof at the close of the proceedings still remains with the taxpayer to establish the Commissioner's errors by a preponderance of the evidence. We find that the Tax Court ably and correctly performed its task.[31]

25. If the Commissioner has one part in mind, certainly he should, and most likely he would, expressly indicate it. Most commentators on the subject note that the Commissioner rarely assesses a penalty for intentional disregard for rules and regulations. There is some suggestion, therefore, that citing Section 6653 (a) in the deficiency notice, in reality, means an assessment of a penalty for negligence. Balter, "The Line Between Negligence and Fraud," 12 N.Y.U.Inst. of Fed.Tax. 15, 39. Hoffman, "International Disregard of Rules and Regulations," 28 Taxes 111 (1950).

26. Balter, Tax Fraud and Tax Evasion § 10.2–3. We are also mindful that prior to the enactment of the 1954 Int.Rev. Code, the penalty for a deficiency due to negligence or intentional disregard of rules and regulations was denominated "Negligence." It is conceivable that the Tax Court's finding that a negligence penalty was properly assessed or that negligence occurred was its shorthand method of saying that both parts of Section 6653 (a) were violated. Such conciseness would be understandable in light of the terminology employed in the predecessors to Section 6653(a). We do not rest on this interpretation of the Tax Court's finding, it being more proper to answer the taxpayers' specific arguments than cavalierly to avoid them. See Section 293(a), Rev.Act 1928; Section 293(a) of the 1939 Int.Rev.Code, 26 U.S.C.A. § 293(a) (1939 Code). See Robinson's Dairy Inc. v. Commissioner of Internal Revenue, 10 Cir. 1962, 302 F.2d 42, for the use of the term "negligence," though the penalty assessed was for negligence or intentional disregard of rules and regulations.

27. "The assessment of a negligence penalty is a purely administrative act dependent upon a finding of the extent of negligence." Board v. Commissioner of Internal Revenue, 6 Cir. 1931, 51 F.2d 73, 76. See Bothwell v. Commissioner of Internal Revenue, 10 Cir. 1935, 77 F.2d 35, 38; Gouldman v. Commissioner of Internal Revenue, 4 Cir. 1948, 165 F.2d 686, 690. See Rules of Practice, Tax Court Rule 32, 26 U.S.C.A.

28. Humphrey's Estate v. Commissioner of Internal Revenue, 5 Cir. 1947, 162 F.2d 1, cert. den., 332 U.S. 817, 68 S.Ct. 157, 92 L.Ed. 394; Tehan v. C. I. R., 7 Cir. 1961, 295 F.2d 895; Cf. William S. Blomely, Jr., T.C.Memo 1964–84.

29. Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Wickwire v. Reinecke, 1927, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; C.I.R. v. Smith, 5 Cir. 1960, 285 F.2d 91, 95, et seq.

30. If the Commissioner presents rebuttal testimony, the Tax Court takes such testimony into consideration.

31. For a discussion on the burden of proof, see Balter, Tax Fraud and Tax Evasion §§ 10.3–1 thru 10.4–7. See also, Copelan, "Practical Problems on Bur-

## VII. Sale of Inherited Property Reported on the Installment Basis.

The various taxpayers inherited property from Joseph Marcello, Sr. The property was sold in 1958 to several corporations, but no gain was reported on any personal tax return and no election to report income on the installment basis was made. In 1962 a Form 1042 (United States Fiduciary Income Tax Return) in the name of Estate of Joseph Marcello, deceased, was filed by Carlos Marcello in which some of the sale proceeds reported and an election to use the installment method [32] was made. The taxpayers contend that this 1962 return and election enables them to use the installment method to report their own shares of the gains from the sale. The taxpayers argue that Carlos acted as agent for each of the other taxpayers and his election on the fiduciary return is, in effect, an election for each of them.

The taxpayer wishing the benefit of installment reporting must make an election on his return either for the year of the sale [33] or for the year when the first payment is received.[34] This latter time for making the election was approved by Rev.Rul. 65–297. The taxpayers request that this case be remanded so that the Tax Court can apply the new ruling.

The Commissioner contends that, despite the new ruling, the taxpayers should be given no relief. The Commissioner suggests that the fiduciary return was filed for a separate taxpayer, the Estate of Joseph Marcello, Sr., and therefore cannot be the means to make an election for the individual taxpayers. There was no express finding as to the effect or purpose of the "fiduciary return." If Carlos filed the return as agent for the individual taxpayers, it may be that they are bound by all that appears on the return.[35] On the other hand, the fiduciary return may have served no significant purpose and may not be binding on the individual taxpayers. In light of the new ruling, we think it proper for the Tax Court to determine the effect of the fiduciary return.

Affirmed in part and remanded in part.

## PETITION FOR REHEARING EN BANC PETITION FOR REHEARING

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25a, subpar. (b), the Petition for Rehearing En Banc is denied.

den of Proof in Civil Trials," 10 N.Y.U. Inst. on Fed.Tax. 865 (1951); 9 Mertens, Law of Federal Income Taxation § 50.-61, et seq.; Ness, "The Role of Statutory Presumptions in Determining Federal Tax Liability," 12 Tax.L.Rev. 321 (1957).

32. Section 453, Int.Rev.Code (1954), 26 U.S.C.A. § 453.

33. Regulation 1.453–8(b).

34. Rev.Rul. 65–297, Cum.Bull. 1965–2, 152.

35. If the return is binding on all the taxpayers, they would reap any benefits that an installment election would bring. The Commissioner suggests that if a taxpayer had a large loss in 1958 and, therefore, wanted to report all of his share of the sale in that year, the fiduciary return's election could not prevent him from so doing. We are not so sure, for if the fiduciary return is binding, it may be binding for better or for worse.