JEAN L. MAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
May v. Commissioner
Docket No. 7776-71
United States Tax Court
T.C. Memo 1974-54; 1974 Tax Ct. Memo LEXIS 265; 33 T.C.M. (CCH) 256; T.C.M. (RIA) 74054; March 5, 1974, Filed. Walter H. Young, for the petitioner. Marion Malone, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $44,492.71 deficiency in petitioner's 1968 Federal income tax. The issues presented are: (1) whether petitioner's conveyance to her husband of her community interest in their residence, pursuant to an interlocutory decree of divorce, resulted in the equal division of community property or the sale of her interest in the residence; and (2) if the conveyance were a sale, whether petitioner used any portion of the sales proceeds to purchase another residence so as to be entitled to defer part of the gain recognized, pursuant to section 1034. [1]
*266 FINDINGS OF FACT All the facts have been stipulated, and the stipulation and exhibits attached thereto are incorporated herein by reference. Petitioner's residence when she filed the petition herein was Topanga, California. She filed her 1968 individual Federal income tax return with the district director of internal revenue at Los Angeles, California. Petitioner and her former husband, Clifford May, were granted an interlocutory decree of divorce on December 6, 1967. Both parties, having been unable to agree on the disposition of their community property, petitioned the divorce court to settle the matter. The interlocutory decree provided in part that the property located at 2200 Old Ranch Road, West Los Angeles, California (hereinafter "residence") was community property; that the community property was to be divided equally; and that the community residence was awarded to the husband, who, in turn, agreed to pay petitioner $200,000 cash within 90 days, and to hold her harmless from all income tax payable by her and arising out of or caused by the $200,000 payment. Clifford May raised the sum of $200,000 by borrowing $150,000 from a savings and loan association and $50,000 *267 from a friend. Petitioner received the $200,000 on January 23, 1968, and at the same time conveyed her interest in the residence to Clifford May. The residence was apparently the most valuable asset the couple then owned. The residence consisted of a large house on approximately 10-1/2 acres of land. The residence was valued at $400,000 by the divorce court. Clifford May was an architectural designer, and he used the residence for business purposes to display his skills as a designer. Prior to their divorce, petitioner and Clifford May resided together in the residence. After petitioner conveyed her interest in the residence to Clifford May, he continued to reside in the house. On June 20, 1968 petitioner used $20,000 of the money received from Clifford May to provide Hillary J. May, petitioner's adult daughter, with funds to purchase a parcel of land in Topanga Canyon. The escrow instructions for the purchase of the property were signed by Hillary J. May; the deed to the property was taken in Hillary's name; and Hillary signed the $18,000 note for the balance of the purchase price, which was secured by a deed of trust which she also signed. The 3-1/2 acre parcel purchased *268 by Hillary for a total price of $38,000 consisted of one acre of improved land with three small houses on it and 2-1/2 acres of unimproved land. The purchase price was allocable $20,000 to the improved portion and $18,000 to the unimproved portion. The record does not indicate an allocation of the purchase price among the three dwellings on the improved portion of the property. Each of these dwellings was in very bad condition, with broken windows, bad roofs, inadequate plumbing and electrical systems in disrepair. Between January 23, 1968 and January 23, 1969 petitioner spent an additional $23,000 making repairs and improvements on the three dwellings. The record does not indicate an allocation of the repairs and improvements costs among the three dwellings. In July 1968, petitioner, Hillary, and her son each moved into one of the three dwellings, which thereafter became their respective principal residences. Title to the property remained of record in the name of Hillary until November 5, 1971, when Hillary conveyed the property to petitioner. Petitioner declares that her reasons for advancing the funds to Hillary to acquire the Topanga Canyon property are (1) so that *269 Clifford May would not know her whereabouts or what property she had acquired, and (2) so that if she died the property would not be in her estate. It was stipulated that there was no agreement between petitioner and her daughter that the daughter would convey the property to petitioner on demand or otherwise. Hillary conveyed the property to petitioner in 1971 on her own, and not at petitioner's request, because Hillary had married and did not want the property subject to any financial risks arising from and after the marriage. Petitioner did not report any gain as a result of the exchange of her community interest in her former residence to Clifford May for $200,000 cash. Respondent determined that petitioner realized a long-term capital gain of $151,471.91 as a result of the exchange. OPINION Petitioner contends that the transfer of her community interest in the residence in exchange for $200,000 cash was not a taxable transaction but a mere equal division of community property, because it was forced upon her by the divorce court, and because the court's decree provides that the community property is to be divided equally. Respondent asserts that the transaction was a *270 sale by petitioner of her community interest in the residence for $200,000 cash, notwithstanding that the transaction took place as a result of a court decree rather than a property settlement agreement, and notwithstanding that the decree referred to an equal division of the community property. We agree with respondent. This is not a case where two assets of the community, a house and cash, were divided between the former spouses equally. See Frances R. Walz, Admx., 32 B.T.A. 718 (1935). Here there was only a house, and the husband had to go outside the community assets to raise the cash he used to acquire petitioner's community interest in the house. The $150,000 Clifford May borrowed from a savings and loan association and the $50,000 he borrowed from a friend are his separate property. The purchase of petitioner's community half of their former residence with the husband's separate property is a taxable sale. Jessie Lee Edwards, 22 T.C. 65 (1954). Nor is it significant that the transfer took place in accordance with a court decree instead of a settlement agreement. The parties were unable to reach an agreement and sought the assistance of the divorce *271 court in resolving their dispute. The decree merely takes the place of the agreement they were unable to reach without the court's aid. Pulliam v. Commissioner, 329 F.2d 97 (C.A. 10, 1964), affirming 39 T.C. 883 (1963), certiorari denied 379 U.S. 836 (1964). Finally, the tax consequences of a divorce decree are not governed by the words in the decree that the community property is to be divided equally. See Jessie Lee Edwards, supra. Here there was, for all practical purposes, an undividable asset, the residence, and the only equitable means of reaching a fair result appears to have been to require one party to buy out the other party. There were, for all that appears, insufficient other community assets to award petitioner to compensate her for giving up her share of the residence. In any event, she was not so compensated. As a result, after the divorce Clifford May owned the $400,000 residence and owed his creditors $200,000, and petitioner had $200,000 cash free and clear. The net result was a fair division of assets and liabilities, but not a tax-free division of the community property. [2] It is obvious this comes as no *272 surprise to the couple, for their decree itself anticipated and provided for the possibility the transaction might give rise to tax liability. Petitioner also argues that if the exchange of her interest in the residence for $200,000 is a taxable sale, she is entitled to postpone recognition of the gain to the extent she reinvested any portion of the proceeds in another residence within one year. Section 1034 provides that if a taxpayer's principal residence is sold and within one year a new residence is "purchased and used by the taxpayer as his principal residence," the tax on the part of the gain from the sale of the old residence which was used to purchase the new residence may be postponed. The parties stipulated petitioner provided $20,000 for the purchase of the Topanga Canyon property and $23,000 for improvements on the property. However, the flaw in petitioner's argument is that she has not shown that she purchased the Topanga Canyon property. Petitioner provided the funds for her adult daughter Hillary to purchase the property. The escrow instructions for the purchase *273 of the property were signed by Hillary; the deed was taken in her name; and Hillary signed the $18,000 note for the balance of the purchase price (which note is secured by a trust deed on the property signed by Hillary). Petitioner, who has the burden of proof, has failed to prove that she, not Hillary, purchased the property. She says, on the one hand, that she gave the funds to Hillary to hide them from her former husband, which might mean Hillary was to hold legal title for petitioner's benefit. She says, on the other hand, that she gave the funds to Hillary to get them out of her estate at death, which would indicate she intended to make a completed gift. There was no agreement that Hillary was to convey the property to petitioner on demand or otherwise. We are not informed of how Hillary viewed the transaction. We hold that petitioner has failed to prove that she "purchased" the property within the meaning of section 1034. Marcello v. Commissioner, 380 F.2d 499 (C.A. 5, 1967), affirming on this issue a Memorandum Opinion of this Court; Rev. Rul. 55-37, 1955-1 C.B. 347. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩
2. See Maurine De Wolfe Brown, a Memorandum Opinion of this Court dated August 20, 1953. ↩