BILL AND JANE L. UPTON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Upton v. Commissioner
Docket Nos. 38024-87, 6012-88, 6013-88, 6014-88, 7615-88, 9572-88
United States Tax Court
T.C. Memo 1990-250; 1990 Tax Ct. Memo LEXIS 269; 59 T.C.M. (CCH) 653; T.C.M. (RIA) 90250; May 22, 1990, Filed *269 Decisions will be entered for the respondent. Craig A. Van Matre, for the petitioners. Steven W. LaBounty, for the respondent. SHIELDS, Judge. SHIELDS
*903 MEMORANDUM FINDINGS OF FACT AND OPINION In these consolidated cases respondent determined deficiencies in and additions to petitioners' Federal income taxes for 1982 as follows: Additions to Tax
Docket No.
Petitioner
Deficiency
Sec. 6653(a)(1) [2]
Sec. 6653(a)(2)
38024-87
Bill & Jane L.
Upton
$ 327
--
--
6012-88
Wayne E. & Jeanette
A. Schirmer
$ 305
$ 15.25 *
6013-88
Kent E. & Paula E.
Johnson
$ 387
--
--
6014-88
James H. & Jane A.
Byland
$ 420
--
--
7615-88
Daniel R. & Bernetta
J. Menze
$ 691
--
--
9572-88
James M. Cooksey
$ 596
--
--
The issues for decision are: (1) whether the activities of an electing small business corporation organized under section 1371(b) by petitioners and others were engaged in for profit within the meaning of section 183; (2) if so, whether and to what extent deductions and *270 investment credits claimed by the corporation are disallowed to petitioners under section 262 as being personal expenses; and (3) whether petitioners in docket No. 6012-88 are liable for additions to tax pursuant to sections 6653(a)(1) and (a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits associated therewith are incorporated herein by reference. All of petitioners resided in Moberly, Missouri, at the time their petitions were filed. Their income tax returns for 1982 were filed with the Internal Revenue Service Center at Kansas City. Each male petitioner is a professional. One is an engineer, two are attorneys and one of these is also a judge, and the other three are dentists. With one exception each of them earned a substantial amount of ordinary income in 1982. In late 1981, petitioners were members of a group of individuals who organized Mid-Missouri Sports, Inc., (Mid-Missouri) as an electing small business corporation under section 1371(b) to construct and operate a health club with facilities for racquetball, weight lifting, basketball, volleyball, tennis, and other sports. All male petitioners were among the *271 25 initial stockholders of the corporation. None of the stockholders had any previous experience in operating a health club, nor did they at any time retain the services of any one who had such experience. Many of the stockholders, however, had been members of other health clubs in other parts of the country. During the organization period, one petitioner, Judge James Cooksey, visited a racquetball club in Spaulding, Missouri, where he had been a member and obtained from its manager some general information regarding the operation of such a club. He also obtained similar information while visiting with a friend who managed a racquetball *904 facility in Texas. Although a full-time attorney and subsequently a local judge, petitioner Cooksey was the initial stockholder who was most active in the corporation's day-to-day affairs. He was also a member of its board of directors and subsequently served as its secretary-treasurer. Prior to the organization of their corporation, its potential stockholders conducted no formal study of the profits to be expected from such a facility in the Moberly area. They simply thought that it would be a profitable venture because of the popularity of *272 tennis and racquetball. At the time there was only one health club in Moberly, the Moberly Aerobics Fitness Center, and it did not have racquetball courts. The nearest club with regulation racquetball courts was located about 35 miles from Moberly. In their planning, the potential stockholders considered the possibility of using a non-profit corporation. It was ultimately decided, however, that a small business corporation would best serve their purposes. The minutes of their organizational meeting contain the statement that "It is the intent of the potential stockholders to organize and operate as a Subchapter S corporation, [thereby] allowing investment credit and net operating losses to flow through to individual stockholders." Among other things, its articles of incorporation authorized Mid-Missouri to maintain and operate a sports and health club and to engage in the purchase, sale, and rental of real property. Its organizational meeting was held in December of 1981 and its certificate of incorporation was issued in January of 1982. Thereafter each of its 25 initial stockholders contributed $ 8,000 to the corporation in exchange for 72 shares, or 4 percent of its stock. *273 The stock certificates contained a provision which restricted resales of the outstanding shares to the corporation. As a site for its health club the corporation purchased a parcel of land located in Huntsville, a town of about 2,000 people which is approximately eight miles from Moberly. This site was chosen because the property was available at a good price, Huntsville had recently experienced considerable growth, and the stockholders thought that the property had good prospects for appreciation. The property was improved with a large building, a log cabin, and a garage. The large building was renovated into a clubhouse. The corporation rented the log cabin on a monthly basis until it was sold in July of 1982. The lot on which the cabin stood was then sold in November of 1984. The garage was rented to one of the corporation's stockholders for $ 15 per month. The property also included two vacant lots which to the date of trial had not been rented or sold. The renovations made to the large building included two regulation racquetball courts; a gymnasium which could be used for basketball, volleyball or aerobics; a whirlpool bath large enough to seat eight persons; a sauna; and *274 a weight lifting room equipped with an extensive array of machines. The clubhouse also had two locker rooms which were equipped with showers and toilets. Mid-Missouri had no permanent employees for the club other than maintenance workers who cleaned the premises bi-weekly. There was no receptionist or security guard. The corporation utilized a key card system whereby its stockholders and others entitled to use the facilities could gain entrance to the club at any time day or night. The cost of the key card system was approximately $ 90 per year. In exchange for their capital investment of $ 8,000 each of the 25 original stockholders received not only 72 shares of the corporation's stock but also the free use of the club facilities by themselves, members of their immediate families and occasional guests. At trial petitioners contended that in the beginning they planned to pay at least a substantial part of the club's annual operating expenses which they estimated to be about $ 12,000 with receipts from associate memberships. An associate membership entitled the individual holder and/or members of his immediate family to use the health club facilities but not to own stock in the *275 corporation. For 1982 the stockholders agreed to limit associate membership to 20 at $ 50 per month for a single membership and $ 75 per month for a family membership. Mid-Missouri has never employed any conventional advertisements to recruit associate members. It has only a standard listing in the local telephone directory as "Mid-Mo Sports, Inc." Without a key card a prospective associate member cannot enter the premises occupied by the club, and there is no sign on the building to indicate that it is the site of a health club. At trial petitioners testified that for new associate memberships the corporation relied upon word-of-mouth referrals and invitations to an open house. The response to the open house was poor, however, since only one or two associate memberships were obtained in this manner. With regard to their failure to use conventional advertising, petitioners submitted the expert testimony of Ronald Sterchi who has been the manager and part owner of tennis, racquetball, and other health clubs. He testified that such clubs appeal primarily to professional people. Consequently, in his opinion, conventional advertising by a health club in Moberly, an area primarily populated *276 by farmers and *905 blue collar workers, would at considerable expense reach an audience largely unreceptive to the idea of joining such a club. Mr. Sterchi also testified that in his opinion the methods upon which the club relied to recruit associate members, namely word-of-mouth referrals and invitations to attend an open house, were the most reasonable under the circumstances. The exact number of associate members who joined the club in 1982 is not clear from the record, but the receipts from them were not nearly enough to cover the club's operating expenses. As a result, the corporation incurred an operating loss for 1982 of $ 13,953.59. In fact, to the end of 1986 the corporation had not reported a profit. For 1983, 1984, 1985, and 1986 its reported losses were $ 17,391, $ 15,809.35, $ 21,352, and $ 14,542, respectively. The largest loss occurred in 1985, the year in which Mid-Missouri sold to a local company 20 associate memberships for use by the company's management. The sale was the subject of a notice issued to the stockholders of Mid-Missouri by its secretary-treasurer in which it was stated that "This arrangement has allowed Mid-Mo Sports to continue operating its facility *277 solely based on membership fees, while at the same time maintaining its status as a private club with a limited number of persons using its facilities." The local company did not renew its associate memberships in the following year. In a meeting in November of 1986, Mr. Ronald W. Callis, a certified public accountant, who was a stockholder in Mid-Missouri and prepared its corporate returns, advised the stockholders of Mid-Missouri that it should assess some amount against its stockholders for their right to use the facilities. The minutes of that meeting contain a statement that "[Mr. Callis'] position * * * is that by paying an assessment this year, [we] will enhance our position as a legitimate Sub 'S' corp." Apparently in compliance with Mr. Callis' advice the corporation in 1986 assessed each of its 25 stockholders $ 350. This assessment reduced but did not eliminate the corporation's loss for 1986. In 1987, the corporation assessed each of its stockholders a total of approximately $ 400 for their right to use the club's facilities. With this assessment, the corporation was able to report a small profit for 1987. At trial, Judge Cooksey testified that it was his understanding *278 that the corporation intended to continue to assess its stockholders an amount in each year that would be roughly equal to the price of an associate membership. In his deficiency notices respondent determined that the investment tax credits and net operating loss deductions claimed by petitioners on their 1982 returns with respect to Mid-Missouri were not allowable because the activity engaged in by Mid-Missouri was not engaged in for profit. Respondent also determined that the underpayments by petitioners Wayne E. and Jeanette A. Schirmer in docket No. 6012-88 were due to negligence or intentional disregard of rules and regulations, and that they are liable for the additions to tax provided by section 6653(a)(1) and (2). Wayne E. Schirmer, an attorney with an adjusted gross income in 1982 of nearly $ 32,000, was the first president of Mid-Missouri. He was also a member of its board of directors in 1982 and attended nearly all of its corporate meetings during the year. During the early part of its existence in 1982 and to some extent into 1983, Mid-Missouri had relatively regular corporate meetings with respect to which minutes were maintained. Thereafter the meetings were infrequent *279 with the result that only two occurred in 1984 and only one in each of the years 1985 and 1986. The corporate minutes fail to mention any discussion of the mounting losses by the corporation or of any suggestions to combat the same. For the most part the minutes deal with the use of the corporate premises and reflect little if any concern with financial matters. The corporation's financial records appear to be in order and well kept. OPINION Net Operating Loss and Investment Credit. Stockholders of an electing small business corporation are allowed to deduct their distributive share of the corporation's net operating loss. Sec. 1374(b). The net operating loss of an electing small business corporation is the excess of its allowable deductions over its gross income. Sec. 172(a). An electing small business corporation may deduct only two types of expenses from an activity not engaged in for profit: (1) deductions which would be allowable without regard to whether such activity is engaged in for profit, section 183(b)(1); and (2) deductions which would be allowable if the activity were engaged in for profit but only to the extent that the gross income derived from such activity for *280 the taxable year exceeds the deductions allowable under section 183(b)(1). Sec. 183(b)(2). Section 48(e) provides that the qualified investment credit of an electing small business corporation shall be apportioned pro rata among its stockholders on the last day of its taxable year. However, the investment tax credit is available to an electing small business corporation only for property with respect to which depreciation is allowable. See section 38(a); 48(a). Depreciation is allowable only for property which is used in a trade or business or is held for the production of income. See section 167(a); Flowers v. Commissioner, 80 T.C. 914, 931 (1983). It follows, therefore, *906 that no investment credit is allowable for property used by an electing small business in an activity not engaged in for profit. Accordingly, the primary issue in this case is whether Mid-Missouri was organized and operated for profit. Petitioner contends that Mid-Missouri was organized and its activities engaged in to earn profits that would pass through to them as its stockholders. Respondent contends that Mid-Missouri was never intended to make a profit but instead was formed to provide its stockholders with *281 the use of the facilities of a private club at no charge and to pass through to them its net operating losses and investment tax credits. Respondent alternatively contends that if we find that the activities of Mid-Missouri were engaged in for profit, then the losses should be disallowed to the extent that the expenses of the corporation were attributable to the stockholders' use of the facilities at no charge. Because of our resolution of the first issue, we need not consider respondent's second contention. If the operation of the health club by Mid-Missouri was not an activity engaged in for profit, its operating losses and investment tax credits cannot be passed through to petitioners and its other stockholders. Whether the activities of Mid-Missouri were engaged in for profit is to be determined at the corporate level. Sec. 1.183-1(b), Income Tax Regs.
It is well established that in determining whether an activity is engaged in for profit, a reasonable expectation of profit is not required. The relevant facts, however, must establish that the activity was engaged in with a bona fide profit objective. Sec. 1.183-2(a), Income Tax Regs.; Fox v. Commissioner, 80 T.C. 972, 1006 (1983), *282 affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinions sub nom. Hook v. Commissioner, Krasta v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner, 734 F.2d 5, 6-7, 9 (3d Cir. 1984). See also Brannen v. Commissioner, 78 T.C. 471, 501 (1982), affd. 722 F.2d 695 (11th Cir. 1984); Hirsch v. Commissioner, 315 F.2d 731 (9th Cir. 1963), affg. a Memorandum Opinion of this Court. In making the determination consideration is given to all relevant facts and circumstances but greater weight is to be given to the objective facts than to the parties' after-the-fact statements of intent. Sec. 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Flowers v. Commissioner, 80 T.C. 914, 931-932 (1983). Petitioners have the burden of proof on the issue. Rule 142(a); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). From the record as a whole, we are satisfied that the activities of Mid-Missouri were not engaged in for profit. *283 Instead the record clearly supports our conclusion that the corporation was organized and its activities carried on for the purpose of providing its stockholders with a health club facility while at the same time passing through to them the corporation's net operating losses and investment tax credits. Accordingly, petitioners are not entitled to deduct their proportionate shares of Mid-Missouri's operating loss for 1982. The relevant factors heretofore taken into account by various courts in determining whether an activity is engaged in for profit are set out in section 1.183-2(b), Income Tax Regs. They are as follows: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or its advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on the same or similar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation *284 involved in the activity. The above factors are not exclusive and are applied according to the unique facts of each case. Sec. 1.183-2(b), Income Tax Regs. No one factor or group of factors is determinative. Golanty v. Commissioner, supra at 426-427. We discuss below each of the factors and their application to this case. (1) From the very beginning the manner in which Mid-Missouri conducted its affairs clearly indicates the absence of a bona fide profit objective with respect to its activities. This is apparent from the statement in the organizational minutes that it was the intent of the founding stockholders to organize and operate as a Subchapter S corporation in order to allow the corporation's "investment credits and net operating losses to flow through to individual stockholders." This statement and the absence of any mention of profits leads one to believe that the club's activities were not expected to generate any profits. The lack of a profit objective is further indicated by the fact that the corporation did virtually nothing to generate associate memberships which was its only source of income. Its advertising *907 was limited to a listing in the telephone directory. *285 A taxpayer's failure to take reasonable steps to promote a profitable product or service is evidence of a lack of a profit objective. See Golanty v. Commissioner, supra at 431. Petitioners contend that Mid-Missouri relied on nontraditional forms of advertising such as word-of-mouth and invitations to an open house affair in an attempt to market associate memberships in the club. They also contend that such steps were the only cost effective advertising available to the club because conventional advertising would appeal to only professional persons in the community who were in the minority. However, the record contains evidence of only one open house held by Mid-Missouri for prospective members. Furthermore, there was no sign on the outside of the clubhouse to indicate that a health club or racquetball and other physical fitness facilities were available within. Petitioners have failed to produce evidence of what steps if any Mid-Missouri took to increase the number of its associate members, when the methods it employed generated little response. While producing an expert witness to testify that conventional advertising would not have been cost-effective to Mid-Missouri, petitioners *286 have failed to submit anything to explain why a health club which was interested in profits would not have used at least a sign on its premises to advertise that racquetball and other facilities were available inside. In fact, without a key card an individual with interest in such facilities could not have entered the building if he had learned of their existence by word-of-mouth or otherwise. From the record before us it appears that the only logical explanation for the lack of interest by Mid-Missouri in obtaining new associate memberships was that stated by its secretary-treasurer in a notice to the stockholders that in 1985 with a relatively small assessment on them the corporation was able to maintain "its status as a private club with a limited number of persons using its facilities." In support of their contention that the corporation's activities were conduced in a business-like manner, petitioners point to its financial records which were meticulously maintained. This alone, however, does not overcome the other indications that the club was not operated for profit, particularly in light of the fact that such records were necessary to support the operating losses and investment *287 credits that the stockholders anticipated would pass through to them. (2) From the record before us it also appears that neither petitioners nor any other initial stockholder in Mid-Missouri had any knowledge or expertise with respect to management and operation of a health club. The only stockholder who made any attempt to acquire such knowledge was Judge Cooksey, and his contacts with friends in the field were apparently very casual and not in depth. While demonstrated expertise by a taxpayer or its responsible parties may not be necessary to establish a profit objective at the beginning of a new activity, in its absence evidence of a careful investigation of the potential profitability of the business or consultation with experts in the field are strong indications of a profit objective. Sec. 1.183-2(b)(2), Income Tax Regs.; Jackson v. Commissioner, 59 T.C. 312, 316 (1972). While a formal market study may not be required, at least a basic investigation of the factors that would affect profit is. Golanty v. Commissioner, supra at 432. In the case before us there is no evidence that the organizing stockholders conducted any investigation of the potential profit from the operation *288 of a health club. Nor did they consult with anyone who had the requisite level of expertise. Judge Cooksey's apparently casual discussions with the manager of the nearby racquetball club cannot be considered consultation with an advisor. We are also unable to consider his equally casual conversation with a friend from college during a visit to Texas as a consultation with an advisor to the corporation. The record, therefore, contains no evidence of any expertise on the part of the stockholders or anyone who advised them in the operation of a health club for profit. (3) The record reveals that no stockholder other than Judge Cooksey devoted any appreciable amount of time to the operations or management of the corporation. For instance, the corporate minutes are marked by the stockholders' casual attendance at meetings and to the brief discussions of administrative matters. As noted in our findings, the meetings occurred more infrequently as time went on despite the corporation's mounting losses. Therefore, it is apparent that no appreciable amount of time was devoted to the corporate operations of the club. (4) Petitioners' willingness to sustain the mounting losses might be understandable *289 if the record indicated that they and the other stockholders continued a nonprofitable business with a reasonable expectation of profiting from appreciation in the value of the assets used in the activity. Petitioners, however, have offered only self-serving testimony to this effect without any corroboration. Petitioners, therefore, have failed to demonstrate a reasonable expectation of such appreciation. (5) Mid-Missouri, being a new corporation, had no previous business history. Furthermore, while the individual petitioners all appear to be reasonably successful in their chosen professions, none of their occupations are sufficiently similar *908 to the operation of a health club to warrant a finding that they had any previous success in a similar business. (6) and (7) Mid-Missouri suffered substantial operating losses in each of its first five years of operation and not from nonrecurring start-up costs or unforeseen adverse circumstances beyond its control. Cf. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979). The continued operation of an activity which remains unprofitable past a reasonable start-up phase is an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. *290 Petitioners claim that the small profit earned by the corporation in 1987 is evidence that it has turned the corner and that it will be a profitable enterprise in the future. An occasional small profit from an activity which usually generates substantial losses is not considered determinative that the activity is engaged in for profit. Sec. 1.183-2(b)(7), Income Tax Regs. Furthermore, the 1987 profit is suspect inasmuch as it resulted from assessments which the stockholders at their accountant's suggestion imposed upon themselves in order to avoid another unprofitable year and to "enhance" their position as a "legitimate" electing small business corporation. (8) and (9) The continued operation of an activity at a loss which generates substantial tax or other benefits such as elements of personal pleasure or recreation may be considered an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(8) and (9), Income Tax Regs. All male petitioners are professionals, and with one exception all of them had a substantial amount of ordinary income in 1982. Therefore, their share of the corporation's net operating losses and investment credits generated substantial tax *291 benefits. These benefits, when considered with the obviously personal and recreational elements involved in this case, clearly indicate that the activities of the corporation were not engaged in for profit. In view of all of the foregoing, we conclude (1) that the activities of Mid-Missouri were not "engaged in for profit" within the meaning of section 183, and (2) that petitioners are not entitled to deduct their proportionate shares of the corporation's operating loss or claim their proportionate share of its investment credit. See Hagler v. Commissioner, 86 T.C. 598, 621-622 (1986). Additions to Tax. In docket No. 6012-88 respondent determined that petitioners Wayne E. and Jeanette Schirmer are liable for additions to tax under sections 6653(a)(1) and (a)(2). Section 6653(a)(1) imposes an addition to tax in the amount of 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. In addition, section 6653(a)(2) imposes an addition to tax in an amount equal to 50 percent of the interest payable on the portion of any underpayment attributable to negligence. As used in section 6653(a), negligence is *292 defined as the failure by a taxpayer to exercise the due care that a reasonable and ordinarily prudent person would exercise under similar circumstances. Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), cert. denied 389 U.S. 1044 (1968); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners, Wayne E. and Jeanette A. Schirmer, have the burden of proving that their underpayment of tax was not attributable to negligence or intentional disregard of rules and regulations. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Respondent presumably chose to limit his determination of the additions to tax under section 6653(a) to these petitioners because Mr. Schirmer is an attorney, the president of Mid-Missouri, a member of its board of directors, and should have been aware that the activities of the corporation were not engaged in for profit. We need not rely upon this presumption, however, because petitioners in docket No. 6012-88 have submitted no evidence to refute respondent's determination. Therefore, respondent's determinations with respect to the additions to tax are sustained. Rule 142(a). Decisions will be entered for the respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: Wayne E. and Jeanette A. Schirmer, docket No. 6012-88; Kent E. and Paula E. Johnson, docket No. 6013-88; James H. and Jane A. Byland, docket No. 6014-88; Daniel R. and Bernetta J. Menze, docket No. 7615-88; and James M. Cooksey, docket No. 9572-88.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50% of the interest due on the deficiency of $ 3055.↩