ARTHUR B. GOLLUBIER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gollubier v. Commissioner
Docket No. 9102-93
United States Tax Court
T.C. Memo 1995-91; 1995 Tax Ct. Memo LEXIS 91; 69 T.C.M. (CCH) 2002; March 2, 1995, Filed *91 Decision will be entered under Rule 155. Arthur B. Gollubier, pro se. For respondent: Judith C. Winkler. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in petitioner's 1989 and 1990 Federal income tax in the amounts of $ 14,209 and $ 12,167, respectively, and additions to tax for those years under section 6662(c)[1] in the amounts of $ 2,842 and $ 2,433, respectively. After concessions, the issues remaining for our decision are: (1) Whether petitioner's deposits in the amounts of $ 25,107 for 1989 and $ 21,587 for 1990 constitute unreported taxable income; (2) whether petitioner received constructive dividends from his television businesses in the amounts of $ 25,407 in 1989 and $ 13,348 in 1990; (3) whether petitioner received salary income from his businesses in the amounts of *92 $ 10,515 in 1989 and $ 20,260 in 1990; and (4) whether petitioner is liable for the additions to tax for negligence or intentional disregard of rules or regulations. FINDINGS OF FACT [2]
Petitioner resided in Orlando, Florida, at the time the petition in this case was filed. In her statutory notice of deficiency, respondent determined that petitioner had unreported income from the following: (1) Deposits from an undetermined source into bank accounts and an asset account; (2) constructive dividends; (3) salary; (4) interest; and (5) other dividends. Petitioner concedes that the interest and other dividends were unreported taxable income. During 1989 and 1990, petitioner was the sole shareholder of two subchapter C corporations: "The T.V. Shop, Inc." and "E.T. TV, Inc." Respondent examined the two corporations' income tax returns and petitioner's individual income tax returns for the years 1989 and 1990, and determined that *93 all three taxpayers had deficiencies for each year. Separate statutory notices of deficiency were sent to each taxpayer, and each taxpayer, in turn, filed a petition with this Court. The two corporate cases were settled prior to trial. During the years in issue, Mr. Gollubier was solely responsible for maintaining the books and records of both corporations, yet no books and records were produced at trial. During 1989 and 1990, petitioner maintained several personal accounts, in which the following deposits were made during the years in issue: Account
1989
1990
C & S Bank
$ 23,714
$ -0-   Centrust
1,393
-0-
Great Western
-0-
1,547
Bank of Central Florida
-0-
10,045
Dean Witter Active Asset Account
-0-
9,995
Total Deposits  $ 25,107
$ 21,587
Despite having made at least these deposits, petitioner reported total losses of $ 22,423 and $ 24,627 for 1989 and 1990, respectively. In arriving at these losses, no wages, salary, or dividend income was considered. Petitioner failed to explain the source of the deposits, yet he alleges that they were not income. He also failed to provide the revenue agent with complete bank records or accounting records from *94 which to determine his 1989 and 1990 gross and taxable income. Thus, respondent used the bank deposits method to reconstruct petitioner's income because of the cash nature of petitioner's business. Several of petitioner's personal expenses were paid from funds of the T.V. Shop, Inc. For instance, petitioner's personal gasoline, the storage of petitioner's personal effects, and his doctor and dentist bills were paid from that source. Respondent determined that these payments for personal expenses from the T.V. Shop, Inc., funds constituted constructive dividends to Mr. Gollubier. Finally, we also note that petitioner received and endorsed several checks payable to "cash". Mr. Gollubier testified that these payments were for "contract labor". In addition to petitioner's receipt and endorsement of several checks payable to cash, the T.V. Shop, Inc., paid "Michael Hidey" for contract labor during the second half of 1989. Respondent determined that these payments were salary income to petitioner. Petitioner is entitled to a Schedule D loss for 1989 of $ 920, an early withdrawal penalty deduction for 1989 of $ 248, and a reduction in the original amount of dividends reported for *95 1989 of $ 117. Petitioner also had additional unreported interest income for 1989 of $ 222, disallowed nonpassive losses for 1989 of $ 23,275, unreported dividend income for 1990 of $ 1,764, and disallowed nonpassive losses for 1990 of $ 11,649. OPINION Petitioner disputes respondent's determinations for the years at issue that: Petitioner's deposits constitute unreported taxable income; petitioner received constructive dividends; and petitioner failed to report his salary income. 1. Deposits
Respondent was unable to trace the source of petitioner's personal deposits; thus, she used the bank deposits method and determined that petitioner failed to report income in 1989 and 1990. Respondent determined that petitioner's deposits totaling $ 25,107 and $ 21,587 during 1989 and 1990, respectively, constitute taxable unreported income. Where, as here, taxpayers have failed to provide adequate records substantiating their income, an indirect method may be used to reconstruct income. Holland v. United States, 348 U.S. 121 (1954). Respondent used the bank deposits method to reconstruct petitioner's income. Petitioner must now prove by a preponderance *96 of the evidence that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Webb v. Commissioner, 394 F.2d 366, 372 (5th Cir. 1968), affg. T.C. Memo. 1966-81. Taxpayers are required to maintain records -- transactions should be documented, contracts provided, and expenses substantiated. Sec. 6001. The bank deposits method has been approved as an indirect method with which to reconstruct income. United States v. Carter, 721 F.2d 1514, 1538 (11th Cir. 1984) (citing United States v. Boulet, 577 F.2d 1165 (5th Cir. 1978)). Petitioner offered no substantive evidence that would explain where his relatively large deposits were sourced. Petitioner did, however, testify that, because he was in the middle of a divorce, he did not want his former wife to know of or to be able to find his money. Petitioner then attempted to explain that he had a cash hoard because he did not trust banks. This incredible testimony, together with the fact that petitioner in fact maintained a corporate bank account *97 for his business in 1987 and 1988, convinces us that petitioner's deposits were unreported income. Because petitioner did not show that these deposits represented either previously taxed items or nontaxable items, he has not met his burden of proof. Hence, we find for respondent and hold that petitioner had unreported taxable income of $ 25,107 in 1989, and $ 2,587 in 1990. 2. Constructive Dividends
We must decide if certain payments made from petitioner's corporations to petitioner were constructive dividends. For purposes of constructive dividends, the expenses must have been nondeductible to the corporation, and they must have conferred some economic benefit on the corporate owner-taxpayer. Meridian Wood Products Co. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984). In Stinnett's Pontiac Serv., Inc. v. Commissioner, 730 F.2d 634, 640 (11th Cir. 1984), affg. T.C. Memo. 1982-314, the Court of Appeals for the Eleventh Circuit addressed the transfer of funds from one corporation to another by an individual who owned shares in both corporations. The court found that the shareholder *98 caused the transfer of funds from the corporation, and, thus, that the shareholder had the requisite control of such funds. Id. at 641. The court then determined that (1) subjective intent to benefit the shareholder existed, and (2) actual benefit inured to the shareholder. Thus, the court found that both "intent" tests were met. Id.
There being no doubt that Mr. Gollubier was in control of all funds at issue during the relevant times, we must determine whether petitioner intended to benefit from the payments and whether he did so benefit from them. We note that Mr. Gollubier: (1) Wrote several checks on the T.V. Shop's bank account to "cash"; (2) purchased gasoline for personal use (despite petitioner's testifying that all such purchases were for business gasoline); (3) wrote checks to pay, for example, for the storage of his personal effects, and for his personal doctor and dentist bills; (4) testified that his business owned only one van, used 50 to 80 percent for business, yet he produced no mileage books, gas receipts, or any other substantiating documentation. [3]
*99 Considering the numerous checks drawn on the corporate account for petitioner's personal expenditures, we find that Mr. Gollubier intended to benefit personally from these payments. We also hold that these payments provided an actual benefit to petitioner. Personal expenditures are generally not deductible. Sec. 262(a). Having found that these nondeductible personal expenditures provided a benefit to Mr. Gollubier in the form of covering his personal needs, we hold that he received constructive dividends as determined by respondent. 3. Salary Income
Petitioner claims that the proceeds from certain checks drawn on his business' account and made out to "cash" were used to pay for "contract labor". Petitioner, however, failed to produce any substantiating information or records concerning the nature of these checks written for contract labor. Respondent determined that, similar to the checks covering petitioner's personal expenses discussed above, the checks paid to "cash" as contract labor represent taxable salary income to petitioner. We agree with respondent. Petitioner failed to carry his burden of showing that respondent's determination was in error. Mr. Gollubier *100 testified that he possessed the T.V. Shop, Inc.'s general ledger, yet it was produced at trial. The failure of a party to produce evidence within his possession which, if true, would be favorable to him, gives rise to the presumption that, if produced, it would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioner failed to show that the amounts he received for "contract labor" were other than taxable salary; hence, we sustain respondent's determinations that petitioner received $ 10,515 and $ 20,260 of taxable salary income in 1989 and 1990, respectively. 4. Negligence
Section 6662 imposes a 20-percent addition to tax on any part of an underpayment due to negligence or intentional disregard of rules or regulations. Petitioner bears the burden of showing that he was not negligent. Patterson v. Commissioner, 740 F.2d 927, 930 (11th Cir. 1984), affg. per curiam T.C. Memo. 1983-655 (citing Marcello v. Commissioner, 380 F.2d 499, 506-507 (5th Cir. 1967), *101 affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299)); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Negligence, for purposes of an addition to tax, is determined using the "reasonable, prudent person standard", and is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F.2d at 506 (fn. ref. omitted). Failing to keep or produce adequate books and records, as required by section 6001, may be justification for imposing the negligence addition to tax. Axelrod v. Commissioner, 56T.C. 248, 258-259 (1971). Petitioner, in the instant case, failed to produce adequate records and omitted substantial amounts of taxable income from this tax return. Mr. Gollubier also caused many of his personal expenditures to be made from his business' funds. Petitioner should have known that such payments were not deductible and, in fact, represented taxable income to him. In Gaines v. Commissioner, T.C. Memo. 1982-731, *102 we imposed the negligence addition based on the taxpayer's several unidentified deposits and his failure to maintain or present adequate records on certain tax items. Id. (citing Axelrod v. Commissioner, supra at 258-59). Petitioner, in the instant case, similarly had many unidentified deposits and failed to keep sufficient records. Accordingly, we sustain respondent's determination as to the negligence additions to tax. Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code in effect for the taxable years under consideration. Rule references are to this Court's Rules of Practice and Procedure.↩
2. The parties have stipulated facts and documents that are incorporated by this reference.↩
3. However, despite petitioner's having used his personal credit card to pay for gasoline, respondent did allocate such expenses 50 percent to business use.↩